UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LUANN P. GOULD,

                Plaintiff,

     – against –

LUCENT TECHNOLOGIES, INC.,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORIGINAL FILED VIA ECF

05 CV 11118 (PBS)

**AFFIDAVIT OF KATHERINE
CAMPBELL IN SUPPORT OF
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

STATE OF MASSACHUSETTS    )
                           ) ss.:
COUNTY OF ESSEX           )

       **KATHERINE CAMPBELL,** being duly sworn, deposes and says:

       1.     I make this Affidavit in support of the Lucent Technology Inc.'s ("Lucent") motion for summary judgment.

       2.     I am currently employed by Lucent as a Workforce Relations Supervisor. I am also the Chairperson of Lucent's Absence Control Board. As such, I have personal knowledge and information of the facts and circumstances set forth in this Affidavit.

**A.**     **Absence Control Plan**

       3.     Lucent maintains a comprehensive five-level absenteeism policy, the ACP. [Exhibit A] The ACP is designed to foster the continuous improvement of attendance; to recognize and reinforce good attendance; and to motivate and rehabilitate employees with excessive absenteeism.

4.    Under the ACP, employees progress through a five-step disciplinary process, depending on the number of non-exempt absences they have in a calendar year. Id. at 2, 8-13.  Exempt, non-chargeable absences under the ACP include, inter alia, leaves under the FMLA and SNLA, Jury Duty, Unpaid Holiday, in-patient hospitalization, scheduled day-care surgery (counted independent of FMLA), court attendance, deaths and/or funerals, and disciplinary suspensions. Id. at 6.  Action will not be taken against the employee for those excludable absences. Id. at 6.  Other non-triggering absences include, inter alia, deaths and/or funerals, court attendance, and in-patient hospitalization and recovery period absences. Id. at 7. While action will not be triggered for these types of actions, they are included in calculating the total number of chargeable absences. Id. at 7.

5.    Each time an employee progresses to the next level, the employee is counseled about his or her attendance record and reminded of Lucent's policy on attendance, "stressing that it is the employee's responsibility to be at work when scheduled." Id. at 8-13.  At Level IV, the employee is given a Final Warning/Paper Suspension, notifying the employee that he or she is on "Final Warning." Id. at 12.

6.    At Level V, the employee's immediate supervisor prepares and issues a Level V Termination Review form, which is submitted to the Absence Control Board (the "Board") for review and determination of whether the employee should be placed on probation or be terminated from employment. Id. at 13.  In determining what Level V action should be administered, the Board considers the following factors: the employee's attendance record for the current year and previous absence history; reasons for the absences; character of service; and consistency in the administration of the ACP. Id. at 5.   Since 1997, with the exception of one

employee, every employee who reached Level 5 under the ACP was terminated from Lucent's employment, and not placed on probation.

7.    Employees on Level I or II must complete one year of employment without any non-exempt absences in order to lower one level. Id. at 6. For each subsequent year of employment completed without any non-exempt absences, the employee will revert back to another, lower level. Id. at 6. An employee on Level 3, 4, or 5 must achieve two consecutive years of employment without any non-exempt absences in order to revert back a level. Id. at 6. For each subsequent year they complete without any non-exempt absence, they will continue to lower one level. Id. at 6.

## B.    Plaintiff Luann Gould's Absenteeism Problem at Lucent

8.    Plaintiff ("Gould" or "Plaintiff") commenced employment at Lucent as a Production Associate on October 16, 1979. At all relevant times during her employment, she was a member of, and represented by, the Communications Workers of America, AFL-CIO, Local 1363 ("the Union").[1]

9.    Shortly after the commencement of her employment, and continuing throughout her entire employment at Lucent, Plaintiff experienced continual and repeated attendance problems. While Plaintiff's absenteeism issues commenced soon after her employment at Lucent, the allegations in Plaintiff's Complaint focus on those absences occurring from 1996 to 2003. For that period of time, Plaintiff's attendance record can be summarized as follows:

---

[1] The terms and conditions of Plaintiff's employment were governed by, among other things, a collective bargaining agreement ("CBA") between the Union and Lucent.

- In 1996, Plaintiff had nine non-exempt absences. Plaintiff's non-exempt absences that year triggered Level I action. Plaintiff also had a total of 58 exempt absences for FMLA leave she took that year, none of which were counted against her.

- Entering 1997 on Level I, for that year, Plaintiff had 86 non-exempt absences.[2] Plaintiff also had a total of 60 exempt absences for FMLA leave she took that year, none of which were counted against her.

- Entering 1998 on Level I, for that year, Plaintiff had 124 chargeable (but not all actionable) absences. Plaintiff also had a total of 60 exempt absences for FMLA leave she took that year, none of which were counted against her.

- Entering 1999 still on Level I, for that year, Plaintiff had 119 chargeable (but not all actionable) absences. Plaintiff's non-exempt absences that year triggered Level II action.[3]

- Entering 2000 on Level II, for that year, Plaintiff had 110 non-exempt absences. Plaintiff's non-exempt absences that year triggered Level III action. Plaintiff also had a total of 4 exempt absences for FMLA leave she took that year, none of which were counted against her.

- Entering 2001 on Level III, Plaintiff had 36 non-exempt absences, initially triggering Level IV action. This action was reversed because it was taken beyond the time period provided under the ACP.[4] Plaintiff also had a total of 60 exempt absences for FMLA leave she took that year, none of which were counted against her.

---

[2] Plaintiff should have been placed on Level II when she reached her sixth non-exempt day of absence, but was not.

[3] Plaintiff should have progressed to Levels III and IV.

[4] Lucent must take action within 30 calendar days after the employee returns from that absence. [Exhibit A at 17]

- Entering 2002 on Level III, Plaintiff had 13.5 non-exempt absences, and should have been moved to Level IV, but inadvertently was not. Plaintiff also had a total of 27 exempt absences for FMLA leave she took that year, none of which were counted against her.

- Entering 2003 on Level III, Plaintiff had six non-exempt absences — triggering Level IV and Level V action. Plaintiff also had a total of 16.5 exempt absences for FMLA leave she took that year, none of which were counted against her.

10.    In summary, from 1996 through 2003, Plaintiff had a total of 502.5 non-exempt, chargeable absences. In addition, during this same period of time, Plaintiff requested and was granted at least seven leaves of absence under the FMLA, for a combined total of 285.5 days off from work. Not one of these FMLA absences counted toward or triggered any action against Plaintiff under the ACP.

11.    In addition to the counseling she received each time she progressed to a higher level under the ACP, at the end of each year, Plaintiff also received an "End of Year Status Review," where she was counseled about her attendance record and the level of action against her.

**C.     Plaintiff's Termination of Employment for**
**Non-Exempt, Chargeable Absences in 2003**

12.    Plaintiff entered 2003 on Level III. Under the ACP, the next non-exempt, chargeable absence exceeding four days in 2003 would progress Plaintiff to Level IV. Further, the next non-exempt, chargeable absence after that in 2003 would result in Level V action – probation or termination.

1.    **Level IV Action**

13.    On January 6-8, 2003, Plaintiff was absent from work for three days. These absences did not fall under any of the exclusions contained in the ACP and were counted toward Plaintiff's four day allotment.

14.    From March 3-28, 2003, Plaintiff was out for approximately three and one-half weeks. As this leave of absence was requested and granted under the FMLA, none of this time was counted against Plaintiff.

15.    On May 5-6, 2003, Plaintiff missed an additional two days of work. Because this absence failed to qualify under the FMLA, Plaintiff progressed to Level IV under the ACP, for which she received a final warning. [Exhibit B]

2.    **Level V Action**

16.    On July 7, 2003, Plaintiff missed an additional day of work to care for her daughter, who was home from school one day with conjunctivitis. Because this absence failed to qualify under the FMLA, on July 30, 2003, Plaintiff progressed to Level V under the ACP. [Exhibit C]

17.    The next day, Plaintiff's Level V action was submitted to the Board for a determination of whether her employment should be terminated. Considering Plaintiff's prior attendance record, and all her previous warnings and counseling, the Board decided to terminate Plaintiff's employment. Effective August 1, 2003, Plaintiff's employment was terminated for unsatisfactory attendance. [Exhibit D]

**D.     Plaintiff Was Not Eligible for Any Time Off Under the SNLA**

18.     Under Lucent's policy, employees are given five "Excused Work Days" ("EWD"), one of which is designated by Lucent – Columbus Day. [Exhibit E] Recognizing "that it may be in the best interest of employees to have the ability to take time off for brief intervals because of personal, immediate needs," Lucent allows up to four of these days to be used in increments of two hours. Id. As permitted under the Small Necessities Leave Act, these EWDs are a substitute for leave under this State Statute.

19.     By the time of Plaintiff's May 2003 absence, she had used all of her EWDs, with the exception of the company-wide designated EWD – Columbus Day. As Plaintiff had no EWDs remaining, assuming her leave was for a SNLA qualifying purpose (which Defendant asserts it was not), Plaintiff was ineligible for any leave under the SNLA.

**E.     Plaintiff Did Not Grieve Any Disciplinary Action Under the ACP**

20.     At all times through the disciplinary process, Plaintiff was continuously represented by her Union and had access to comprehensive grievance procedures (up to and including, final and binding arbitration) under the CBA should she disagree with any of the disciplinary actions taken against her. [Exhibit F]

Despite the repeated counseling and warnings she received as she progressed though the five levels, and having her Union Steward, and/or the option of having the Union Steward, present during such actions, Plaintiff never filed a grievance over any action until her employment was terminated. Even then, Plaintiff never fully exhausted the grievance procedures under the CBA.

**WHEREFORE**, I respectfully request that the Court grant Defendant's summary judgment motion in its entirety.

Katherine Campbell
Katherine Campbell

Sworn to before me this
18th day of August 2006.

Notary Public



**EXHIBIT A-1**

**(to Affidavit of Katherine Campbell in Support
of Defendant's Motion for Summary Judgment)**

# MERRIMACK VALLEY WORKS
# ABSENCE CONTROL PLAN (Revised 11/99)





*Board*
*person*
*203400*

DEF    00094

**MERRIMACK VALLEY WORKS**
**ABSENCE CONTROL PLAN** (Revised 11/99)

**Lucent Technologies**
Bell Labs Innovations



# TABLE OF CONTENTS

**SECTION 1\***
Introduction
Unique Features
Definitions

**SECTION 2\***
Absence Control Board

**SECTION 3\***
Program Guidelines
• Levels of Action
• Timetable on Admin. Levels
• Examples

**SECTION 4\***
Employees with Less Than
Six Months of Service

**SECTION 5\***
Employees with Less Than
One Year of Service

\*Changes as of 11/99

**SECTION 6\***
End of Year Status Review

**SECTION 7**
Absence Spanning Two Years

**SECTION 8**
Termination of Employment

**SECTION 9**
Part Time Assignment

**SECTION 10**
Employees Returning From
Leaves of Absence or Lay Off

**SECTION 11**
• Forms
• Distribution Table

**DEF    00095**

# MERRIMACK VALLEY WORKS
# ABSENCE CONTROL PLAN (Revised 11/99)



**Lucent Technologies**
Bell Labs Innovations

## SECTION 1

## INTRODUCTION

Lucent Technologies, Merrimack Valley (hereinafter "The Company") is vitally and continually interested in the attendance of each employee and considers good attendance a most important job requirement.

Employee attendance is an important factor in the successful operation of any business. Since absences and resultant disrupted work schedules result in higher operating costs, and fall downs to service to the customer, the Company must give continuing attention to the maintenance of good attendance by employees.

The Absence Control Plan (ACP) is a system designed to foster the continuous improvement of attendance; to recognize and reinforce good attendance; and, to motivate and rehabilitate employees with excessive absenteeism.

Effective administration of the Absence Control Plan depends on the **performance of all supervisors** to ensure consistency and equitable treatment of all employees. Both objectives can be met by following these procedures:

- Each supervisor will determine the category of each absence (i.e., SA/DY/PA,etc.) and record the absence on the employee's attendance record.

- New employees will receive an orientation to the ACP. This orientation should occur during the employee's first week on the job.

*The Company reserves the    right to revise any part of the
Absence Control Plan it deems necessary to meet these objectives*

DEF    00096

**MERRIMACK VALLEY WORKS**
**ABSENCE CONTROL PLAN** (Revised 11/99)    **Lucent Technologies**
Bell Labs Innovations



# UNIQUE FEATURES OF THE ABSENCE CONTROL PLAN

1. Explicit criteria is established in defining the different levels of attendance.

- **Marginal**: Average of five days or five occasions per year.

- **UNSATISFACTORY**: More than five days or five occasions in the current year.

2. At the start of the 1998 calendar year, if an employee begins the current calendar year on Level l, he/she will have five days or occasions before triggering action to the next level of the Absence Control Plan. If an employee begins the current calendar year(1998)on Level 2 or Level 3, he/she will have four days or occasions before triggering action to the next level of the Absence Control Plan. If an employee begins the current calendar year (1998) on Level 4 or Level 5 - Probation, he/she will have three days or occasions before triggering action to next level of the Absence Control Plan.

3. Specific levels of warning are issued for continued unsatisfactory attendance.

4. Requests for Deviations from the specific levels (1 thru 4) of warning and recommendations for Probation or Termination (Level 5) are reviewed by the **Absence Control Board.**

5. Any absences arising from a secondary employment, are chargeable under the **Absence Control Plan.**

6. The calendar year is used Jan. 1 through Dec. 31.

2

**DEF    00097**

# MERRIMACK VALLEY WORKS
## ABSENCE CONTROL PLAN (Revised 11/99)



**Lucent Technologies**
Bell Labs Innovations

## <u>DEFINITIONS</u>

### *<u>Absence</u>*

Time off the job for any reason, excluding those absences designated as **"in-late" or "out-early,"** (less than two hours).

Failure of an employee to work a scheduled overtime shall not be considered an absence under this plan.

Criteria for determining whether an absence shall be counted as a half day or whole day are as follows:

A. If an employee works less than two hours during the first half and less than two hours during the second half of the standard daily work schedule, one days absence will be recorded. (Determined by using the midpoint of the scheduled day, excluding any lunch period.)

B. If an employee works less than two hours during either the first or second half of the standard daily work schedule, a half day's absence will be recorded. (Determined by using the midpoint of the scheduled day, excluding any lunch period.)

The designation of full or partial days of absence as indicated above is for the purpose of attendance records only, and does not apply in determining payment for the time worked or payment or nonpayment of the actual time absent on such days.

### *<u>Current Year</u>*

Calendar year.

### *<u>Deviation</u>*

A request made to the Absence Control Board by the Line Organization not to advance an employee to an action level otherwise prescribed by the Plan (Level 1 thru 4).

The Absence Control Board **is required to review** the Line Organization's request for Deviation and make a recommendation.

### *<u>End of Year Status Review</u>*

A process whereby at the end of each calendar year, Supervisors will review the attendance records of each of their employees and advise them of their ACP status for the coming year.

### *<u>FMLA</u>*

Family Medical Leave Act: Days covered by FMLA are not chargeable under the ACP.

DEF    00098

# MERRIMACK VALLEY WORKS
# ABSENCE CONTROL PLAN  (Revised 11/99)

**Lucent Technologies**
Bell Labs Innovations



### *Hospitalization*

Over-night hospitalization, for disabling condition that required the hospitalization.

### *Scheduled Day*
### *Care Surgery*

Admission to a hospital as a **scheduled surgical daycare patient.** (Not Emergency or Outpatient Treatment).

### *Occasion*

For purposes of the Absence Control Plan, each uninterrupted chargeable absence will be considered as one occasion. An occasion's duration could be from a half-day to….

### *Part-Time*
### *Absences*

When an employee returns from an absence and is temporarily assigned to part-time work by the Medical Organization.

### *Probation*

A request made to the Absence Control Board by the Line Organization not to terminate an employee who has reached Level 5. The Absence Control Board is **required to review** all action at Level 5 and make its recommendation.

### *Recurrence*

An absence determined by the Medical Organization to be related to a prior sickness absence.

### *Sent Home*
### *BY Medical*

An absence that results when an employee is sent home by the Medical Organization.

DEF    00099

**MERRIMACK VALLEY WORKS**
**ABSENCE CONTROL PLAN** (Revised 11/99)    **Lucent Technologies**
                                            **Bell Labs Innovations**



## SECTION 2

### ABSENCE CONTROL BOARD

The purpose of the Absence Control Board is to assure that consistency and reasonable judgement are being applied equitably in all organizations.

The major duties of the Board are as follows:

- To review all Deviation requests.
- To review all attendance cases that reach Level 5 Probation or Termination/Remedial Review.
- To review and recommend changes in the ACP.

The factors the Board considers when reviewing a Deviation request (Level 1 through Level 4); and a Level 5 - Probation or Termination/Remedial Review, are:

- Employee's attendance record for current year and previous absence history.
- Reasons for absences.
- Line's recommendation and reasons.
- Character of service.
- Company service.
- Consistency in administration of the Absence Control Plan.

The Board will have the following members:

**VOTING MEMBERS**

                    Attendance Supervisor - Chairperson
                    Function Manager - Human Resources
                    Function Manager - Line Organization (6) (Representing Both Universes)

\* In order for the Board to vote, a quorum must be met which is 50 percent of the members plus (1) present.

**NON-VOTING MEMBERS**

                    Supervisor - Workforce Relations
                    Function Manager and/or Supervisor - Employee's
                    Line Organization
                     Representative from the Medical Organization

DEF    00100

**MERRIMACK VALLEY WORKS
ABSENCE CONTROL PLAN** (Revised 11/99)     **Lucent Technologies**
Bell Labs Innovations



## SECTION 3

## PROGRAM GUIDELINES

### ABSENCE CONTROL PLAN

Control of absences is to be based on an employee's current attendance record.

Employees on roll, with greater than one year of service, at the beginning of the current calendar year, action will be taken if she/he has had greater than 5 days of absences or 5 occasions in the current year. Employees with less than one year of service see Section 5.

Employees with less than six months of service, the Line Organization reserves the right to terminate their employment if the employee's attendance is considered to be unsatisfactory as defined by the New Employee Evaluation Form.

An employee on level 1or 2 must achieve 1 year of no chargeable absences to the ACP in order to lower **ONE** level. For each **subsequent** year that they maintain no chargeable absences, they will lower **ONE** level providing the employee worked the entire year. (See example Page 18).

An employee on level 3, 4 or 5 must achieve 2 consecutive years of no chargeable absences to the ACP in order to lower **ONE** level. For each **subsequent** year that they maintain no chargeable absences, they will lower **ONE** level. The employee is required to have worked both years with no breaks in service, even if the service is bridged immediately. (See example Page 18).

An employee, who achieves 4 consecutive years of no chargeable absences to the ACP, will have no action taken until they have exceeded 10 days/occasions of chargeable absences in the current year. If the 10 days are exceeded, action will be taken per the ACP plan.  The employee is required to have worked all 4 years with no breaks in service, even if the service is bridged immediately. (See example Page 19).

### *Excludable Absences*

Action will not be taken and the days or occasions will not be included for total absence computation:

1.1   Jury Duty/Court Attendance (Supported by Summons; Subpoena; and/or supported by written documentation.
1.2   Military Duty/Leave (NG).
1.3   Death in Immediate Family as defined in the General Agreements (DF).
1.4   Unpaid Holiday (UH).
1.5   Industrial Injury (JI).
1.6   Insurmountable Transportation Failures - When specified by the Labor Relations Organization Severe Weather Policy.
1.7   Election Service (EC).
1.8   Non-scheduled workday (NP).

6

DEF    00101

# MERRIMACK VALLEY WORKS
## ABSENCE CONTROL PLAN (Revised 11/99)



**Lucent Technologies**
Bell Labs Innovations

1.9    FMLA (FS, FD, FM).

1.10   Other Union Business (Not paid by Company i.e., conventions, conferences, etc.) (UN).

1.11   When an employee's services are temporarily interrupted by the Company for reasons such as, but
       not limited to, lack of work, power failure and material shortages (PX).

1.12   Absences of employees responding to emergencies as members of Voluntary Fire Departments, Civil
Defense and Rescue Squads when such absence is **excused by the Company** (CD).

1.13   Vietnam Veterans who served in Vietnam will be allowed to have one day off in a calendar year
without pay for the purpose of having an Agent Orange examination, supported by written documentation
(NP).

1.14   Work Stoppage (LS).

### *Non-Triggering Absences*

Action will not be taken; however, the days or occasions will be included for total absence computation:

2.1    Local Leave (DL).

2.2    Deaths and/or Funerals - Other than those defined in General Agreements (DF).

2.3    Court Attendance - Plaintiffs or Defendants, supported by written documentation (CT).

2.4    In-patient hospitalization and recovery period absences (SH).

2.5    Scheduled Day-Care Surgery (SH).

2.6    Physical Disciplinary Suspension (DS).

| EXAMPLE A | EXAMPLE B |
|---|---|
| 3 days sickness | 3 days suspension |
| 3 days suspension - No Action | 3 days sickness - Action (*) |
| | (*) Providing employee meets ACP requirements. |

### *Chargeable Absences*

Action will be taken and days or occasions will be included for total absence computation:

3.1    Sickness (Partial Days and 1st thru 7th Consecutive Calendar Days).
       (SA, SN, SX).

3.2    Full Sickness Absence (Less Than Six Months of Service).

3.3    Part-Time Assignment (Up to 5 hours per Day). (NS). **See Page 25.**

3.4    Full Days Absence (Starting With 8th Consecutive Calendar Day) (DY).

3.5    Personal Reasons (Not Covered by Other Codes). (PA)(PN).

3.6    Sent Home by Medical. (SM).

7

**DEF    00102**

# MERRIMACK VALLEY WORKS
# ABSENCE CONTROL PLAN  (Revised 11/99)



**Lucent Technologies**
Bell Labs Innovations

## LEVELS OF ACTION

### LEVEL 1 - INFORMAL DISCUSSION/VERBAL WARNING

For employees whose attendance record exceeds the guidelines, the following action should be taken:

Level 1 action will be taken when an employee's chargeable absences exceed a total of five days or five occasions in the current calendar year.

A Level 1 action, Informal Discussion/Verbal Warning form outlining the employee's attendance record for the current year, will be prepared by the employee's supervisor.

The immediate Supervisor will discuss with the employee his/her attendance record and review with the employee the Company's policy on attendance, stressing that it is the employee's responsibility to be at work when scheduled and reminding the employee of the possible consequences of a continued unsatisfactory attendance record.

The employee will also be advised that if he/she remains at Level 1 at the start of the next year, the employee will be placed on the next applicable level of ACP upon the first occurrence that causes the employee to exceed five days of chargeable absences or five occasions for that calendar year.

Union Representation will be provided at this discussion level at the employee's request.

The employee and the Union will receive copies of the warning. A copy will be filed in the employee's attendance folder.

Level 1 Form on Page 28.

* Note: If the employee does not want the Union present, document it and notify the Union as soon as practicable.

8

DEF    00103

**MERRIMACK VALLEY WORKS**
**ABSENCE CONTROL PLAN** (Revised 11/99)    **Lucent Technologies**
Bell Labs Innovations



## LEVEL 2 - FORMAL DISCUSSION/WRITTEN WARNING

For employees whose attendance record exceeds the guidelines, the following action should be *taken:*

Upon the next absence occasion after Level 1 action, a Formal Discussion/Written Warning form outlining the employee's attendance record for the current calendar year will be prepared.

At this meeting, the employee will be notified that he/she is being given a Formal Discussion/Written Warning and that the next absence occurrence in the current year will place the employee on the next level of the ACP.

The immediate Supervisor will again discuss with the employee his/her attendance record, as well as previous action taken under the Absence Control Plan for the current or previous year.

The employee will be advised that he/she will remain on Level 2 at the start of the calendar year, the employee will be placed on the next applicable level of the ACP upon the first occurrence that causes the employee to exceed **four days** of chargeable absences or **four occasions** of absence for that calendar year.

A Union Representative will be present during the discussion between the Supervisor and the employee.

The employee and the Union will receive a copy of the warning. A copy will also be filed in the employee's departmental attendance folder.

Level 2 Form on Page 29.


\* Note: If the employee does not want the Union present, document it and notify the Union as soon as practicable.

9

**DEF    00104**

# MERRIMACK VALLEY WORKS
# ABSENCE CONTROL PLAN (Revised 11/99)

**Lucent Technologies**
Bell Labs Innovations



## LEVEL 3 - REVIEW/COMPANY NOTICE

For employee's whose attendance record exceeds the guidelines, the following action should be taken:

Upon the next absence occasion after Level 2 action, the Supervisor, Function Manager and Union Representative review the employee's attendance record for the current calendar year with the employee.

At this meeting, the employee will be notified that he/she is being given a Review/Company Notice and that the next absence occurrence in the current year will place the employee on the next level of ACP.

The employee will be advised that he/she will remain on Level 3 at the start of the calendar year, the employee will be placed on the next applicable level of the ACP upon the first occurrence that causes the employee to exceed **four days** of chargeable absences or **four occasions** of absence for that calendar year.

The employee will be warned that termination of employment is possible if his/her unsatisfactory attendance continues. Copies of Level 3 - Review/Company Notice form, will be given to the employee and to the Union. A copy will also be filed in the employee's departmental attendance folder.

Level 3 Form on Page 30.

\*  Note:  If the employee does not want the Union present, document it and notify the Union as soon as practicable.

In the event that a Function Manager is not available at the time of issuing this notification, the Supervisor must sit down with the employee and the Union Representative and take immediate action.

10

DEF    00105

**MERRIMACK VALLEY WORKS**
**ABSENCE CONTROL PLAN** (Revised 11/99)



11

DEF    00106

# MERRIMACK VALLEY WORKS
## ABSENCE CONTROL PLAN (Revised 11/99)



Lucent Technologies
Bell Labs Innovations

## LEVEL 4 - FINAL WARNING/PAPER SUSPENSION

For employees whose attendance record exceeds the guidelines, the following action should be taken:

Upon the next absence occasion after Level 3 action, the employee's attendance record for the current calendar year is reviewed with the employee by the Supervisor, Function Manager, and a Union Representative.

The employee is given a copy of Level 4 - Final Warning/ Paper Suspension form stating that he/she is being given a **Final Warning** and that the next action to take will be a review for termination of employment.

The employee will be advised that he/she will remain on Level 4 at the start of the calendar year, the employee will be placed on the next applicable level of the ACP upon the first occurrence that causes the employee to exceed **three days** of chargeable absences or **three occasions** of absence for that calendar year.

The employee will be warned that termination of employment is possible if his/her unsatisfactory attendance continues.

Copies of the Level 4 - Final Warning/Paper Suspension form will be given to the employee and to the Union. A copy will also be filed in the employee's departmental attendance folder.

Level 4 Form on Page 31.

\* Note: If the employee does not want the Union present, document it and notify the Union as soon as practicable.

---

In the event that a Function Manager is not available at the time of issuing this notification, the Supervisor must sit down with the employee and the Union Representative and take immediate action.

12

DEF    00107

# MERRIMACK VALLEY WORKS
## ABSENCE CONTROL PLAN (Revised 11/99)



**Lucent Technologies**
Bell Labs Innovations

## LEVEL 5 - PROBATION OR TERMINATION/REMEDIAL REVIEW

The next absence occasion after Level 4 action will result in consideration for Probation or Termination of the employee. The employee's immediate Supervisor will prepare and issue Level 5 Probation or Termination Review form to the Absence Control Board's Secretary.

The Probation or Termination/Remedial Review form will contain an analysis of the employee's current and previous attendance records and the Line Organization's recommendation.

When requesting a meeting with the Absence Control Board, the Line Organization must provide to the Secretary, in addition to the Level 5 form, a copy of the current and prior attendance records.

If for a specific reason, the Line Organization recommends Probation, the Absence Control Board is required to review such request and make its recommendation.

If a decision is made to Terminate, a "Termination of Employment" (GN-12-1500), should be prepared and submitted to the Payroll Organization for their immediate processing and preparation of check(s), if applicable, as early as possible on the same day but not later that the following day after the Review Board meets.

If the Line Organization and the Absence Control Board recommendations do not agree, final disposition rests with the Line Organization. In such cases, the Manager, Function (or above), of the requesting organization, must prepare a Memorandum for Record stating the reasons for the action taken, and forward it to the Chairperson of the Absence Control Board.

Notification to the employee of the Absence Control Board's recommendation shall be made on the same day of the meeting or at the time the employee returns to work. A Memorandum for Record will be prepared citing what action was taken, either Probation or Termination.

Copies of the Memorandum for Record **(See examples on pages 13 and 14)** will be given to Labor Relations and the Union. A copy will also be filed in the employee's departmental attendance folder.

Level 5 Form on Page 32.


\* Note: If the employee does not want the Union present, document it and notify the Union as soon as practicable.

DEF   00108

# MERRIMACK VALLEY WORKS
## ABSENCE CONTROL PLAN (Revised 11/99)

**Lucent Technologies**
Bell Labs Innovations



# PROBATION

November 11, 1998

MEMORANDUM FOR RECORD

Re: Probation of J. J. Doe, Section 94111
SSN 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

On November 11, 1998, a discussion was held with J. Doe regarding his/her unsatisfactory attendance. Mr. P. O. Box, Function Manager, and I. M. Frank, Union Steward, were present. Mr. Doe was informed that his/her attendance was unsatisfactory and had reached the point that he/she was considered for termination. His/her attendance record for current and previous three years is as follows:

## CURRENT YEAR - 1998

| DATE | DAYS | OCCASIONS | REASON | ACTION |
|------|------|-----------|--------|--------|
| Jan. 3 | 1 | 1 | Headache | None |
| Jan.18/25 | 6 | 1 | Flu | Level 1 |
| Mar. 5/11 | 5 | 1 | Flu | Level 2 |
| Aug. 13/16 | 4 | 1 | Migraine | Level 3 |
| Nov. 15 | 1 | 1 | Pers. Bus. | Level 4 |
| Nov. 8 | 1 | 1 | Pers. Bus. (*car accident*) | Termination Review |
| Total Days Absent Current Year: | 18.0 | | | |

## PREVIOUS ATTENDANCE ANALYSIS

| | 1997 | 1996 | 1995 | 1994 |
|---|------|------|------|------|
| Total Days Absent | 24 | 6 | 29 | 0 |

Mr./Ms. Doe was informed that he/she would not be terminated at this time, but would be placed on probation and that termination would result if his/her unsatisfactory attendance continued.

_____        _____
Function Manager            Department

Copy to:
Employee
Employee's Attendance Folder
Labor Relations
Union

14

**DEF    00109**

# MERRIMACK VALLEY WORKS
# ABSENCE CONTROL PLAN (Revised 11/99)

**Lucent Technologies**
Bell Labs Innovations



# TERMINATION

November 11, 1998

MEMORANDUM FOR RECORD

Re: Probation of J. J. Doe, Section 94111
SSN 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

On November 11, 1998, a discussion was held with J. Doe regarding his/her unsatisfactory attendance. Mr. P. O. Box, Function Manager, and I. M. Frank, Union Steward, were present. Mr. Doe was informed that his/her attendance was unsatisfactory and had reached the point that he was being terminated. His/her attendance record for current and previous three years is as follows:

## CURRENT YEAR - 1998

| DATE | DAYS | OCCASIONS | REASON | ACTION |
|------|------|-----------|--------|--------|
| Jan. 3 | 1 | 1 | Headache | None |
| Jan.18/25 | 6 | 1 | Flu | Level 1 |
| Mar. 5/11 | 5 | 1 | Flu | Level 2 |
| Aug. 13/16 | 4 | 1 | Migraine | Level 3 |
| Nov. 15 | 1 | 1 | Pers. Bus. | Level 4 |
| Nov. 8 | 1 | 1 | Pers. Bus. *(no reason given)* | Termination Review |
| Total Days Absent Current Year: | 18.0 | | | |

## PREVIOUS ATTENDANCE ANALYSIS

| | 1997 | 1996 | 1995 | 1994 |
|------|------|------|------|------|
| Total Days Absent | 24 | 6 | 29 | 0 |

Mr./Ms. Doe was informed that his last day worked would be November 11, 1998, and he/she will not be considered for rehire due to his/her overall unsatisfactory attendance record.

This memorandum will serve as "**Notification to the Union**."

_____          _____
Function Manager                Department

Copy to:
Employee
Employee's Attendance Folder
Labor Relations
Union

15

**DEF    00110**

# MERRIMACK VALLEY WORKS
# ABSENCE CONTROL PLAN (Revised 11/99)

**Lucent Technologies**
Bell Labs Innovations



## DEVIATION REQUEST

If for mitigating circumstances, **ACP** action is not recommended by the Line Organization, the Absence Control Board is required to review the Line Organization's request for Deviation (only for Level 1 through Level 4), and make its recommendation.

If the Line Organization and the Absence Control Board recommendations do not agree, final disposition rests with the Line Organization.

In such cases, the Manager, Function (or above), of the requesting organization, should prepare a Memorandum for Record stating the reasons for the action taken and forward it to the Chairperson of the Absence Control Board .

Deviation Request Form on Page 33.

DEF    00111

# MERRIMACK VALLEY WORKS
# ABSENCE CONTROL PLAN (Revised 11/99)



**Lucent Technologies**
Bell Labs Innovations

# SECTION 3

## TIMETABLE ON ADMINISTERING LEVELS

When an employee returns from an absence, the supervisor **MUST** inform the employee on the first day back that the absence will be considered chargeable should it not be covered by FMLA.

It is the intent that the supervisor is to take action per the ACP within the next 30 calendar days, except as identified below.

EXAMPLE 1:

Employee informed that she/he has 15 calendar days to provide FMLA documentation which is acceptable to the Medical organization. If the absence has been approved (within 15 calendar days) for FMLA, the supervisor will review with the employee their attendance record. No action will be taken under the ACP for this absence.

EXAMPLE 2:

Employee informed that she/he has 15 calendar days to provide FMLA documentation which is acceptable to the Medical organization. If the absence has not been approved (within 15 calendar days) for FMLA, the supervisor will take the necessary action per the ACP within 30 calendar days.

Extenuating circumstances may occur where a Level is to be administered after 30 calendar days, if so, this matter must be reviewed by the ACP Board prior to the Level being administered.

17

DEF    00112

**MERRIMACK VALLEY WORKS
ABSENCE CONTROL PLAN** (Revised 11/99)    **Lucent Technologies**
Bell Labs Innovations



### EXAMPLE OF HOW TO PROGRESS THROUGH APPLICABLE ATTENDANCE LEVELS

1998 - Enter Year Level 0
3/4/98     3 SA        No Action
6/8/98     2 SA        No Action
9/10/98    2 SA        Level 1 Administered

1999 - Enter Year Level 1
5/7/99     5 SA        No Action

2000 - Enter Year Level 1
5/10/00    3 SA        No Action
6/2/00     3 SA        Level 2 Administered

2001 - Enter Year Level 2
3/2/01     4 SA        No Action
10/1/01    3 SA        Level 3 Administered
11/1/01    1 SA        Level 4 Administered

2002 - Enter Year Level 4
4/4/02     3 SA        No Action
6/6/02     2 SA        Level 5 Administered

The example above shows how an employee will end a year on a level and continue that same level into the next year due to having chargeable absences during the year. The allowable number of days before action is taken has not been revised.

**The only way this employee will be able to lower their level is to achieve 2 consecutive years of no chargeable absences. At that time, they will be lowered one level.**

18

DEF    00113

**EXHIBIT A-2**

**(to Affidavit of Katherine Campbell in Support
of Defendant's Motion for Summary Judgment)**

## MERRIMACK VALLEY WORKS
## ABSENCE CONTROL PLAN (Revised 11/99)

**Lucent Technologies**
Bell Labs Innovations



## ACP EXAMPLES

### ALL EXAMPLES SHOWN ARE FOR CHARGEABLE ABSENCES ONLY

### FMLA IS A NON CHARGEABLE ABSENCE AND DOES NOT TRIGGER ACTION

**EXAMPLE 1:**

Employee enters 1998 on Level 2

| YR. | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|---|
| #DAYS | 0 | 4 | 0 | 5 | 3 | 8 |
| LEVEL | 1 | 1 | 0 | 0 | 0 | 1 |

The above example shows an employee entering 1998 on level 2. At the end of 1998 **THEY LOWER ONE LEVEL** because they had no chargeable absences in 1998. At the end of 1999, they will **REMAIN ON LEVEL 1** because they had chargeable absences in year 1999. At the end of year 2000 the employee will lower one additional level (level 0) because they had no chargeable absences in year 2000. Employee will remain on level 0 for years 2001 and 2002 because they met ACP marginal guidelines. In year 2003 employee will be placed on level 1 for having unsatisfactory attendance and will remain on level 1 at year end.

**EXAMPLE 2:**

Employee enters 1998 on Level 5 - Probation

| YR. | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|---|
| #DAYS | 0 | 0 | 0 | 0 | 10 | 0 |
| LEVEL | 5 | 4 | 3 | 2 | 2 | 1 |

The above example shows an employee entering 1998 on level 5. At the end of 1998 **THEY ARE STILL ON LEVEL 5** even though they had no chargeable days out. At the end of 1999, they will **LOWER ONE LEVEL** because they had no chargeable absences for 2 consecutive years. For each **SUBSEQUENT** year that they maintain no chargeable absences, they will drop one level. In the year 2002, action will be taken when/if 10 days are exceeded. In this example, the employee did not exceed 10 days, therefore, they enter year 2003 on level 2.

19

DEF    00114

# MERRIMACK VALLEY WORKS
# ABSENCE CONTROL PLAN (Revised 11/99)



**Lucent Technologies**
Bell Labs Innovations

**EXAMPLE OF 4 YEARS ATTENDANCE WITH NO CHARGEABLE ABSENCE**

1998 - Enter Year on Level 1
0 Days in 1998

1999 - Enter Year With Acceptable Attendance
0 Days in 1999

2000 - Enter Year With Acceptable Attendance
0 Days in 2000

2001 - Enter The Year With Acceptable Attendance
0 Days in 2001

2002 - Enter The Year With Acceptable Attendance
3/4/02     3 SA
5/5/02     5 SA
9/3/02     3 SA        Level 1 Administered (Employee Exceeded 10 Days)

The above example shows how an employee can lower a level, have acceptable attendance, and end up on a level due to exceeding the number of days allowed (10) for the current year. This only occurs when 4 years of no chargeable absences proceeds the current year absences that exceed 10 days. All other scenarios allow for only 5 days absence in a current year or less depending on level.

20

**DEF    00115**

**MERRIMACK VALLEY WORKS**
**ABSENCE CONTROL PLAN** (Revised 11/99)    **Lucent Technologies**
Bell Labs Innovations



## SECTION 4

## EMPLOYEES WITH LESS THAN SIX MONTHS OF SERVICE

The Line Organization reserves the right to terminate within six months of employment any employee whose attendance is considered to be unsatisfactory.

If an employee has 2 or more incidental absence days and /or occasions prior to six months of service, the employee must be warned if their attendance does not improve, the continuation of their employment is in jeopardy. The Union is advised at that time of this Final Warning.

If the employee is unable to maintain a satisfactory record, prior to notification of termination, the action must be reviewed by the Absence Control Board to assure fairness and consistency.

DEF   00116

**MERRIMACK VALLEY WORKS
ABSENCE CONTROL PLAN** (Revised 11/99)    **Lucent Technologies**
Bell Labs Innovations



## SECTION 5

# EMPLOYEES WITH LESS THAN ONE YEAR OF SERVICE

Effective January 1, 2000

New hires are on probation for absence control, during their first year of employment with Lucent Technologies, Inc.

Within the first year, if an employee has 2 or more incidental absence days and /or occasions, regardless if they occur within the same calendar year, the employee will be informed that their attendance is "unsatisfactory". At this time, the supervisor is to notify the Union of this conversation. If they have any further absences prior to one year of service, their attendance will be reviewed by the ACP Board for possible termination.

Once the individual has achieved one year of service, they will be placed on the traditional ACP. At this time, an End of the Year Status Review will be performed. All incidental days taken within the current calendar year will be counted towards the allowable days before action is taken.

EXAMPLE:

| | |
|---|---|
| Employee hired: | 3/2/00 |
| Incidental Absence: | 9/15/00 & 9/16/00 - Employee informed that attendance is unsatisfactory, Final Warning - Union notified |
| Incidental Absence: | 1/31/01 - Employee informed that their attendance is to be reviewed by the ACP Board for possible termination. |
| Total days = 3 days on 2 occasions | |

Action to be taken:

Employee informed that their attendance would be reviewed by the ACP Board for continued employment. If the determination by the Board is termination, the employee is to be informed that they are being terminated for "unsatisfactory" attendance.

If the Board determines probation, the employee is informed that they are on probation and any further chargeable absence under the ACP will result in a termination review. This status remains until the employee has reached the one-year term of employment.

In this same example, if this employee has no further absences in the current year and achieves one year of service, 3/2/01, the employee will then be placed under the traditional ACP. That results in an additional 4 incidental sickness days and/or occasions before action would be taken per the ACP.

5 days allowable minus 1 day taken in January equals 4 days left.
If this individual exceeds the 5 chargeable days and or occasions, action will be taken as provided in the

22

**DEF    00117**

**MERRIMACK VALLEY WORKS**
**ABSENCE CONTROL PLAN** (Revised 11/99)
ACP.



Lucent Technologies
Bell Labs Innovations

# SECTION 6

## END OF YEAR STATUS REVIEW

At the beginning of each calendar year, the attendance records of all employees, regardless of their ACP status, are reviewed with the employees by their immediate supervisor. For employees hired after January 1, 2000, follow Section 4, Employees with Less Than Six Months of Service and Section 5, Employees with Less Than One Year of Service on End of Year Status Reviews.

A copy of the End Of Year Status Review form (See Page 36), will be given to all employees regardless of their ACP status. For employees on levels of the program, the form will advise them of their current status. The form will indicate whether the employee will continue at the same level; be lowered one level; or, be removed from the program.

1.)  Add all the absences days/occasions in the previous year.

2.)  If the employee triggered any ACP action in the previous year, that is the level the employee will enter the current year on. The employee will be told that action will be taken should they exceed the number of days/occasions outlined in the table below.

3.)  If the employee entered the previous year on level 1 or 2 and had no chargeable days/occasions during the year, the employee will be lowered one level, **providing the employee worked the entire year with no breaks in service.** The employee will also be informed that action will be taken should they exceed  the number of days/occasions outlined in the table below.

4.)  If the employee entered the previous year on levels 3, 4 or 5 and had no chargeable days/occasions during the **TWO** previous years , the employee will be lowered one level ,**providing the employee worked  both years with no breaks in service.** The employee will also be informed that action will be taken should they exceed  the number of days/occasions outlined in the table below.

5.)  If the employee had no chargeable days/occasions in the 4 previous years providing the employee worked all  4 years with no breaks in service, the employee will be told that action will be taken should they exceed 10 days/occasions in the current year.

Level @ Beginning                                              # of Days

DEF   00118

# MERRIMACK VALLEY WORKS
## ABSENCE CONTROL PLAN  (Revised 11/99)



**Lucent Technologies**
Bell Labs Innovations

|     of Year      | Before Action |
|------------------|---------------|
| 0 or 1           |       5       |
| 2 or 3           |       4       |
| 4 or 5(probation)|       3       |

24

DEF     00119

# MERRIMACK VALLEY WORKS
## ABSENCE CONTROL PLAN (Revised 11/99)

**Lucent Technologies**
Bell Labs Innovations



## SECTION 7

### ABSENCE SPANNING TWO YEARS

The procedures listed below, are to be followed in considering ACP action for an employee whose occasion of absence starts in one calendar year and extends into the next calendar year.

A. No action considered until employee returns to work full time.

B. At the time the employee returns to work on a full time basis:

1. No action if occasion of absence is excludable. (See pages 6 and 7.)

2. If absence is not excludable, review absence records for ACP year just past. Apply ACP guidelines as though the employee worked the last day of that year. (Count last day as day of absence.)

3. Take appropriate ACP level action if required providing employee has met the ACP criteria.

*Example:* Assume the employee's absence starts on December 10, 1997 through January 3, 1998 (total of nineteen days). If the fiftheen-day absence in calendar 1997 should have put employee on any level at that time, issue such level effective the last calendar day of that year, i.e., December 31, 1997. Then apply the End of Year Status Review rules and take appropriate action, if necessary.

4. No action can be taken in the current calendar year when the occasion of absence extends into the new calendar year even though, the employee may have exceeded the applicable number of days or occasions.

*Example:* Assume the employee returned to work on the last day of the calendar year just completed, e.g., absence from December 10, 1997 through January 10, 1998. The nine-day absence in 1998 will count towards the current year's total, but no additional action will be taken when employee returns to work.

5. Employees will be allowed the applicable number of additional days or occasions in the current year, over and above the spanning days, before considering ACP level action.

25

DEF    00120

## MERRIMACK VALLEY WORKS
## ABSENCE CONTROL PLAN (Revised 11/99)



**Lucent Technologies**
Bell Labs Innovations

## SECTION 8

TERMINATION OF EMPLOYMENT FORM
GN-l2-1500

If an employee is at Level 2 or above of the ACP at the time of termination of employment, for other than economic reasons, i.e., lay off, a Memorandum for Record should be prepared stating that the employee is **Not Recommended for Rehire.** The Memorandum should be attached to the Termination of Employment form. (GN-12-1500).

The employee **must** be informed of such action.

26

**MERRIMACK VALLEY WORKS
ABSENCE CONTROL PLAN** (Revised 11/99)     **Lucent Technologies**
Bell Labs Innovations



# SECTION 9

## PART-TIME ASSIGNMENT BY THE MEDICAL ORGANIZATION

When an employee returns from a disability absence and is assigned to part-time work by the Medical Organization, the following guidelines are to be used:

1. No action will be taken until the employee is returned to full time work.

2. If absence includes hospitalization or scheduled day care surgery, no action should be taken but, full and one-half day are counted towards the current year's total, if not covered by FMLA.

3. When assigned to full time, the employee's attendance record must be reviewed immediately. All full and one-half day (four or five hours worked are counted as one half day) absences are added together and treated as one occasion. After totaling the absences, apply the ACP guidelines and, if required, appropriate action is taken.

4. Any time that the Medical Organization assigns a tour of six or seven hours per day, it should be counted as a full day worked (for ACP purpose only) and marked as a non-chargeable early out.

5. If the employee is absent for a full day during the time that he/she is assigned to part-time work, the absence must be counted as a full day. (A) If the absence is related to the original disability, it should be considered as part of the same occasion. (B) If the absence is not related to the original disability, it should be treated as a separate occasion and action will be taken, if applicable. Please see the examples below:

Note: Examples with no FMLA

Example # 1 - Employee is currently on Level 1.

|  | M | T | W | T | F | TOTAL |  |
|---|---|---|---|---|---|---|---|
| WEEK I | SA | SA | SA | SA | SA | 5.0 | Hospitalization (Leg Operation) |
| WEEK II | 4/NS | 4/NS | 4/NS | 4/NS | 4/NS | 7.5 |  |
| WEEK III | 4/NS | 4/NS | SA |  | SA | 4/NS | 11 | Stomach Virus |
| WEEK IV | 4/NS | 4/NS | 4/NS |  | 4/NS | 4/NS | 13.5 |  |

WEEK V On Monday, employee made able to work full time. Action is taken and employee is advanced to Level 2

Example # 2 - Employee is currently on Level 1.

|  | M | T | W | T | F | TOTAL |  |
|---|---|---|---|---|---|---|---|
| WEEK I | SA | SA | SA | SA | SA | 5.0 | Hospitalization (Leg Operation) |
| WEEK II | 4/NS | 4/NS | 4/NS | 4/NS | 4/NS | 7.5 |  |
| WEEK III | 4/NS | 4/NS | SA |  | SA | 4/NS | 11 | Infection of Leg |
| WEEK IV | 4/NS | 4/NS | 4/NS |  | 4/NS | 4/NS | 13.5 |  |

WEEK V On Monday, employee made able to work full time. No Action is taken.

***Note:***
**4/NS = ½ NS**

27

**DEF     00122**

# MERRIMACK VALLEY WORKS
## ABSENCE CONTROL PLAN (Revised 11/99)

**Lucent Technologies**
Bell Labs Innovations



## SECTION 10

### EMPLOYEES RETURNING FROM LEAVE OF ABSENCE OR LAYOFF

The Human Resources Organization will use the below outlined procedures to assist the Line Organization in determining an employee's status on the Absence Control Plan upon their reinstatement from a Leave of Absence or Rehire from Lay Off.

1. Employees who were not on any level of the ACP when they left the Company, will return with the same status.

2. Employees who return in the same calendar year that they left the Company, will return on the same ACP level they were on when they left.

3. For all others, an End of Year Status Review will be made at the time of rehire and ACP status will be determined by applying **only** the total months on active roll and the respective absences within that time period.

4. Unusual cases will be handled on an individual basis.

The Human Resources Organization will notify the Line Organization of the returning employee's ACP status.

An End of Year Status Review will be made at the end of the current fiscal year by the employee's immediate Supervisor issuing only the total months on active roll and the respective absences within that time period.

---

*Former employees who are rehired but do not immediately bridge service will be treated as new employees for ACP purposes.*

---

DEF    00123

**MERRIMACK VALLEY WORKS**
**ABSENCE CONTROL PLAN** (Revised 11/99)



**Lucent Technologies**
Bell Labs Innovations

# SECTION 11.

# FORMS

# DISTRIBUTION TABLE

29

DEF    00124

# MERRIMACK VALLEY WORKS
## ABSENCE CONTROL PLAN (Revised 11/99)



**Lucent Technologies**
Bell Labs Innovations

## LEVEL 1 - INFORMAL DISCUSSION/VERBAL WARNING

TO: Secretary (Absence Control Board)

RE: Notification of Informal Discussion/Verbal Warning - Level 1 Action

EMPLOYEE'S NAME:_____     SECTION_____

SS#_____     E#_____     E.S.D._____

On_____, the employee was informed that his/her attendance record is unsatisfactory. The employee's attendance record is as follows.

DAYS/OCCASIONS ABSENT IN CURRENT YEAR:_____

| <u>Date</u> | <u>Days</u> | <u>Occasions</u> | <u>Reason</u> | <u>Action</u> |
|---|---|---|---|---|
| | | | | |

Union Steward informed of action:_____
(NAME)

_____     _____
Supervisor                         Section

Copy to:
Employee
Employee's Attendance Folder
Union

30

DEF    00125

# MERRIMACK VALLEY WORKS
# ABSENCE CONTROL PLAN (Revised 11/99)

**Lucent Technologies**
Bell Labs Innovations



## LEVEL 2 - FORMAL DISCUSSION/WRITTEN WARNING

TO:  Secretary (Absence Control Board)

RE:  Notification of Formal Discussion/Written Warning - Level 2 Action


EMPLOYEE'S NAME:_____     SECTION_____

SS#_____     E#_____     E.S.D._____

On_____, the employee was informed that his/her attendance record is unsatisfactory. The employee's attendance record is as follows.

DAYS/OCCASIONS ABSENT IN CURRENT YEAR:_____

| <u>Date</u> | <u>Days</u> | <u>Occasions</u> | <u>Reason</u> | <u>Action</u> |
|------|------|------|------|------|




Union Steward informed of action:_____
                                                            (NAME)


                                 _____        _____
                                      Supervisor                      Section

Copy to:
Employee
Employee's Attendance Folder
Union

31

**DEF    00126**

**MERRIMACK VALLEY WORKS
ABSENCE CONTROL PLAN** (Revised 11/99)



Lucent Technologies
Bell Labs Innovations

## LEVEL 3 - REVIEW/COMPANY NOTICE

TO:  Secretary (Absence Control Board)

RE:  Review/Company Notice - Level 3 Action

EMPLOYEE'S NAME:_____    SECTION_____

SS#_____    E#_____    E.S.D._____

On_____, the employee was informed that his/her attendance record is unsatisfactory. The employee's attendance record is as follows.

DAYS/OCCASIONS ABSENT IN CURRENT YEAR:_____

| Date | Days | Occasions | Reason | Action |
|------|------|-----------|--------|--------|

The employee was informed that he/she was being placed on Level 3 of the Absence Control Plan. He/She was also informed that further unsatisfactory attendance will result in his/her being placed on Level 4. _____Union Steward, was present and received a copy of this Notification.
       (NAME)

_____    _____
Function Manager           Department

Copy to:
Employee
Employee's Attendance Folder
Union

32

**DEF    00127**

**MERRIMACK VALLEY WORKS
ABSENCE CONTROL PLAN** (Revised 11/99)    Lucent Technologies
Bell Labs Innovations



### LEVEL 4 - FINAL WARNING/PAPER SUSPENSION

TO:  Secretary (Absence Control Board)

RE:  Notification of Final Warning/Paper Suspension - Level 4 Action

EMPLOYEE'S NAME:_____    SECTION_____

SS#_____    E#_____    E.S.D._____

On_____, the employee was informed that his/her attendance record is unsatisfactory. The employee's attendance record is as follows.

DAYS/OCCASIONS ABSENT IN CURRENT YEAR:_____

| Date | Days | Occasions | Reason | Action |
|------|------|-----------|--------|--------|
|      |      |           |        |        |

The employee was informed that he/she was being placed on Level 4 of the Absence Control Plan. He/She was also informed that further unsatisfactory attendance may result in his/her termination of employment. _____Union Steward, was present and received a copy of this Notification.
        (NAME)

_____    _____
Function Manager    Department

Copy to:
Employee
Employee's Attendance Folder
Union

33

**DEF    00128**

# MERRIMACK VALLEY WORKS
## ABSENCE CONTROL PLAN (Revised 11/99)



**Lucent Technologies**
Bell Labs Innovations

## LEVEL 5
## PROBATION OR TERMINATION/REMEDIAL REVIEW

TO:  Secretary (Absence Control Board)

EMPLOYEE'S NAME:_____    DATE_____

SS#_____    SECTION_____

LEVEL/TIER_____    E.S.D_____

DAYS/OCCASIONS ABSENT IN CURRENT YEAR:_____

| Date | Days | Occasions | Reason | Action |
|------|------|-----------|--------|--------|
|      |      |           |        |        |

DAYS/OCCASIONS ABSENT IN PREVIOUS YEARS HISTORY

| YEAR | #OF MONTHS ON ROLL | # OF DAYS | # OF OCCASIONS |
|------|--------------------|-----------|----------------|
| 19___ |  |  |  |
| 19___ |  |  |  |
| 19___ |  |  |  |
| 19___ |  |  |  |

**TOTAL DAYS ABSENT IN CURRENT AND PREVIOUS YEARS HISTORY_____.___**

**LINE ORGANIZATION RECOMMENDATION:_____**

_____          _____
    Function Manager                  Department

### ABSENCE CONTROL BOARD'S RECOMMENDATION

Probation_____          Termination_____

_____          _____
    Chairperson, ACP                          Date

34

DEF    00129

# MERRIMACK VALLEY WORKS
# ABSENCE CONTROL PLAN (Revised 11/99)

Copy to:
Labor Relations



## DEVIATION REQUEST

TO:  Absence Control Board

NAME:_____     DATE_____

SS#_____     SECTION_____     E#_____

LEVEL/TIER_____     E.S.D._____

DAYS/OCCASIONS ABSENT IN CURRENT YEAR:_____

<u>Date</u>                <u>Days</u>                <u>Occasions</u>                <u>Reason</u>                <u>Action</u>

DAYS/OCCASIONS ABSENT IN PREVIOUS YEARS HISTORY

| YEAR | # OF MONTHS ON-ROLL | # OF DAYS | # OF OCCASIONS |
|------|---------------------|-----------|----------------|
| 19___ | | | |
| 19___ | | | |
| 19___ | | | |
| 19___ | | | |

TOTAL DAYS ABSENT IN CURRENT AND PREVIOUS YEARS HISTORY_____.____

LINE ORGANIZATION RECOMMENDS:_____

_____          _____
      Function Manager                    Department

ACP BOARD  RECOMMENDATION:   Approved_____          Not Approved_____

_____                    _____

35

DEF    00130

# MERRIMACK VALLEY WORKS
# ABSENCE CONTROL PLAN (Revised 11/99)



**Lucent Technologies**
Bell Labs Innovations

Chairperson, ACP
    Date

Copy to:
Employee
Employee's Attendance Folder
Union

## REQUEST TO RESCIND
## DUE TO F. M. L. A.

TO:  Secretary  (Absence Control Board)

NAME:_____     DATE_____

SS#_____     SECTION_____     E#_____

LEVEL/TIER_____     E.S.D._____

DAYS_____ OCCASIONS_____     ABSENT F. M. L. A. TIME_____

| Date | Days | Occasions | Current Level | Revised Level |
|------|------|-----------|---------------|---------------|
|      |      |           |               |               |

_____     _____     _____
      Supervisor                    Function Manager                    Department

BENEFIT RECOMMENDATION FOR F. M. L. A.:   Approved_____     Not Approved_____

IF NOT, WHY_____

COMMENTS:_____

_____

_____

_____     _____
      Authorized Benefit Delegate              Date

Copy to:

36

DEF    00131

# MERRIMACK VALLEY WORKS
## ABSENCE CONTROL PLAN  (Revised 11/99)



**Lucent Technologies**
Bell Labs Innovations

Employee
Employee's Attendance Folder
Union
ACP Board
Benefits

37

DEF    00132

**MERRIMACK VALLEY WORKS
ABSENCE CONTROL PLAN** (Revised 11/99)



**Lucent Technologies**
Bell Labs Innovations

## ACP DOCUMENTATION DISTRIBUTION

|  | COPY TO | | | | ORIGINAL TO |
|---|---|---|---|---|---|
|  | Employee | Employee Attendance Folder | Labor Relations | Union | Secretary ACB |
| Level 1 | Y | Y | N | Y | Y |
| Level 2 | Y | Y | N | Y | Y |
| Level 3 | Y | Y | N | Y | Y |
| Level 4 | Y | Y | N | Y | Y |
| Level 5 | Y | Y | Y | Y | Y |
| (Memorandum for Record Re: Probation or Termination/Remedial) | | | | | |
| End of Year Review | Y | Y | N | Y | Y |

**NOTE:**
**Y=Yes**
**N=No**

38

DEF   00133

# MERRIMACK VALLEY WORKS
# ABSENCE CONTROL PLAN (Revised 11/99)

**Lucent Technologies**
Bell Labs Innovations



## END OF YEAR STATUS REVIEW

TO: Secretary (Absence Control Board)

RE: End of Year Status Review

EMPLOYEE'S NAME:_____     SECTION_____

SS#_____     E#_____     E.S.D._____

On_____, a discussion was held with _____ to review
his/her attendance records for the calendar year _____.

PREVIOUS HISTORY REVIEW

YEAR_____     YEAR_____     YEAR_____     YEAR_____

Days Absent

ACTION TAKEN FOR ATTENDANCE IN PREVIOUS YEAR

Date          Cum. Days          Occasions          Reason          Action

**LEVEL AT END OF YEAR_____.**

The following action will be taken as a result of the End of Year Status Review:

| | | | |
|---|---|---|---|
| Continue at Same Level | _____ | Remain Off Program | _____ |
| Lower One Level | _____ | 10 Day Application | _____ |

A copy of this Memorandum will be given to _____, Union Steward , who (was)
(was not) present during this discussion.
                                    (NAME)

_____          _____
        Supervisor                        Section

Copy to:
Employee
Employee's Attendance Folder
Union

39

**DEF     00134**

 

# MERRIMACK VALLEY WORKS
# ABSENCE CONTROL PLAN   (Revised 11/99)



**Lucent Technologies**
Bell Labs Innovations

DEF   00135

**EXHIBIT B**

**(to Affidavit of Katherine Campbell in Support
of Defendant's Motion for Summary Judgment)**

# MERRIMACK VALLEY WORKS
## ABSENCE CONTROL PLAN (Revised 11/97)



**Lucent Technologies**
Bell Labs Innovations

## LEVEL 4 - FINAL WARNING/PAPER SUSPENSION

TO: Secretary (Absence Control Board)

RE: Notification of Final Warning/Paper Suspension - Level 4 Action

EMPLOYEE'S NAME: _LUANN P. GOULD_    SECTION _JJ12NE201_

SS# _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_    E# _7718725_ (HIRED)    E.S.D. _10/16/1979_

On _JULY 16, 2003_, the employee was informed that his/her attendance record is unsatisfactory. The employee's attendance record is as follows.

DAYS/OCCASIONS ABSENT IN CURRENT YEAR: _5 / 2_

| Date | Days | Occasions | Reason | Action |
|------|------|-----------|--------|--------|
| JAN 6,7,8/2003 | 3 | 1 | SICK | NONE |
| MAY 5,6/2003 | 2 | 1 | FMLA NOT QUALIFIED | LEVEL 4 |

The employee was informed that he/she was being placed on Level 4 of the Absence Control Plan. He/She was also informed that further unsatisfactory attendance may result in his/her termination of employment. _Robert J. HANAGAN_ Union Steward, was present and received a copy of this Notification.

_MIKE HODGE FOR_        _Stephen Sidell_        _JJ12NE201_
(NAME)                  Function Manager        Department

Copy to:
Employee
Employee's Attendance Folder
Union

31

DEF    00053

**EXHIBIT C**

**(to Affidavit of Katherine Campbell in Support
of Defendant's Motion for Summary Judgment)**

MERRIMACK VALLEY WORKS
ABSENCE CONTROL PLAN (Revised 11/97)

**Lucent Technologies**
Bell Labs Innovations



## LEVEL 5
## PROBATION OR TERMINATION/REMEDIAL REVIEW

TO:  Absence Control Board

NAME: *LUANN P. GOULD*    DATE *7/29/03*

SS# *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*   SECTION *JJ12NE201*

LEVEL/TIER *PL1*    E.S.D. *10/16/1979*

DAYS/OCCASIONS ABSENT IN CURRENT YEAR: *6 / 3*

| Date | Days | Occasions | Reason | Action |
|------|------|-----------|--------|--------|
| *1/6-8/03* | *3* | *1* | *SICK* | *NO ACTION* |
| *5/5-6/03* | *2* | *1* | *FMLA NOT QUALIFIED* | *LEVEL 4* |
| *7/7/03* | *1* | *1* | *FMLA NOT QUALIFIED* | *LEVEL 5* |

DAYS/OCCASIONS ABSENT IN PREVIOUS YEARS HISTORY

| YEAR | # OF MONTHS ON-ROLL | # OF DAYS | # OF OCCASIONS |
|------|---------------------|-----------|----------------|
| 19 *2002* | *12* | *7* | *5* |
| 19 *2001* | *12* | *95* | *4* |
| 19 *2000* | *12* | *116* | *2* |
| 19 *99* | *12* | *119* | *7* |

TOTAL DAYS ABSENT IN CURRENT AND PREVIOUS YEARS HISTORY *344 . 0*

LINE ORGANIZATION RECOMMENDATION: *TERMINATION*

*S. Dick*    *JJ12NE201*
Function Manager                Department

ABSENCE CONTROL BOARD'S RECOMMENDATION

Probation _____            Termination *X*

*Kathy Campbell*                *7-31-03*
Chairperson, ACP                Date

Copy to:
Labor Relations

32

DEF    00054

**EXHIBIT D**

**(to Affidavit of Katherine Campbell in Support
of Defendant's Motion for Summary Judgment)**

August 1, 2003

MEMORANDUM FOR RECORD

Re: Termination, Luann Gould HR# 7718725

On Friday, August 1, 2003, a discussion was held with L. Gould regarding her unsatisfactory attendance. Mr. Steve Sickel, Function Manager, Pyong Deletis, Supervisor and *G. Nilsson* Union Steward, were present. Ms. Gould was informed that her attendance was unsatisfactory and had reached the point that she was being terminated. Her attendance record for current and previous three years is as follows:

### CURRENT YEAR - 2003

| DATE | DAYS | OCCASIONS | REASON | ACTION |
|------|------|-----------|--------|--------|
| Jan. 6 - 8 | 3 | 1 | sick | None |
| May 5 - 6 | 2 | 1 | Personal Advised | Level 4 |
| July 7 | 1 | 1 | Personal Advised | Level 5 |
| Total Days Absent Current Year | 6.0 | | | |

### PREVIOUS ATTENDANCE ANALYSIS

| | 2002 | 2001 | 2000 | 1999 |
|------|------|------|------|------|
| Total Days Absent Chargeable | 5.5 | 39 | 109.5 | 119 |

Ms. Gould was informed that her last day worked would be Friday, August 1, 2003 and she will not be considered for rehire due to her overall unsatisfactory attendance record.

This memorandum will serve as **"Notification to the Union."**

*Steve Sickel*
Function Manager

Copy to:

- Employee
- Employee's Attendance Folder
- Labor Relations
- Union

DEF    00055

**EXHIBIT E**

**(to Affidavit of Katherine Campbell in Support
of Defendant's Motion for Summary Judgment)**

C.BA: 3|1|03- 9o|4

**ARTICLE 13 - EXCUSED WORK DAYS**

**1** A regular EMPLOYEE with a TERM OF EMPLOYMENT of six months on January 1 in the current year shall be eligible for five (5) Excused Work Days with pay.

**2** The COMPANY shall have the option of converting one (1) paid Excused Work Day to a designated day provided the COMPANY so designates prior to January 31 in the current year.

(a) An EMPLOYEE in any work group for which an Excused Work Day is designated by the COMPANY and who is not otherwise eligible for a paid Excused Work Day shall be excused and paid for such designated day, provided he or she is on the active payroll of the COMPANY on the designated Excused Work Day.

(b) An EMPLOYEE who has been paid for a COMPANY designated Excused Work Day, but who subsequently transfers to another COMPANY facility during the same CALENDAR YEAR, shall be eligible for payment for a COMPANY designated Excused Work Day at the facility to which transferred which is observed at the facility after the date of such EMPLOYEE'S transfer.

**3** An EMPLOYEE who is not required to work on any paid Excused Work Day shall receive pay not to exceed eight (8) hours at his or her ADJUSTED RATE plus applicable NIGHT WORK and 7-DAY COVERAGE BONUSES for such day.

**4** If an EMPLOYEE agrees to work on any paid Excused Work Day and, in the event the COMPANY determines that such day cannot be re-scheduled, such EMPLOYEE shall be paid as follows:

(a) An EMPLOYEE who works on any paid Excused Work Day shall be paid in lieu of his or her Excused Work Day in accordance with the provisions of Paragraph 3 and shall in addition be paid for all hours worked on such day in the same manner as a regularly scheduled work day.

(b) Time worked by an EMPLOYEE on an Excused Work Day shall be considered time worked for all purposes.

**5** An EMPLOYEE who is absent with pay on a non-designated Excused Work Day shall be permitted to reschedule such day.

**6** The COMPANY and the UNIONS recognize that it may be in the best interest of EMPLOYEES to have the ability to take time off for brief intervals because of personal, immediate needs. Accordingly, for the years 2003 and 2004 up to four (4) Excused Work Days (EWDs) each year may be used as follows:

(a) An EMPLOYEE may designate and schedule, as applicable, four (4) EWDs to be used flexibly. This provision shall apply to the EMPLOYEE'S paid EWD(s) that are not designated by the COMPANY.

(b) Each flexible EWD may be divided into increments of two (2) hours for an increment, provided, however, that where the length of an EMPLOYEE'S SCHEDULED DAILY TOUR is not evenly divisible by two (2), the last increment of each EWD may be less than two (2) hours.

(1) An increment may be taken at any time during the year up to and

DEF    00138

including the actual scheduled flexible EWD provided; 1) the EMPLOYEE'S supervisor is notified before the beginning of the tour; and 2) such time granted is consistent with the needs of the business.

(c) The time may be taken based on the EMPLOYEE'S personal need to take the time.

(d) Any remaining portion of the Excused Work Day(s) so designated must be taken no later than the end of each CALENDAR YEAR.

**7** In the event that it is necessary for an EMPLOYEE to be absent for a death in his or her immediate family, as provided in ARTICLE 14, PAY TREATMENT FOR ABSENCES on a day the EMPLOYEE had previously scheduled as a paid Excused Work Day, such day shall be rescheduled, provided however, that the combined number of Excused Work Days which may be rescheduled in accordance with this Article and ARTICLE 11, VACATIONS shall not exceed the number of days determined by the COMPANY to be a reasonable absence under ARTICLE 14, PAY TREATMENT FOR ABSENCES.

**8** EMPLOYEES who are LAID OFF will be granted pay in lieu of their unused EWD's.

**DEF     00139**

**EXHIBIT F**

**(to Affidavit of Katherine Campbell in Support
of Defendant's Motion for Summary Judgment)**

**PREAMBLE**

THIS COLLECTIVE BARGAINING AGREEMENT (which may also be referred to as the "GENERAL AGREEMENT") is made this day of January 9, 2003 effective March 1, 2003, by and between LUCENT TECHNOLOGIES INC., hereinafter called the "COMPANY" and the COMMUNICATIONS WORKERS OF AMERICA, hereinafter called the "UNION."

And, WHEREAS, the parties have engaged in collective bargaining for the purpose of developing a general agreement on wages, hours of work, and other conditions of employment;

NOW, THEREFORE, in consideration of the premises and mutual agreements herein contained, the parties hereto agree with each other as follows with respect to the EMPLOYEES of the COMPANY recognized as being represented by the UNION:

1

### ARTICLE 8 –GRIEVANCE PROCEDURE

A    The following provisions set forth in this Section A, shall apply to Manufacturing P&M, Tier and RDS&S Employees only

1    General

    (a)    To provide for the expeditious and mutually satisfactory settlement of grievances arising with respect to the interpretation or application of this Agreement or other terms and conditions of employment, the following procedures shall apply.

    (b)    Any individual EMPLOYEE or group of EMPLOYEES shall have the right at any time to present matters in their own interest to the COMPANY and to have such matters adjusted, without the intervention of the UNION, as long as the adjustment is not inconsistent with this Agreement and provided the UNION has been given an opportunity to be present at such adjustment.

    (c)    When an EMPLOYEE or group of EMPLOYEES wishes to have a grievance presented for settlement by the UNION, such grievance shall, except as otherwise provided in this or any other written agreement between the COMPANY and the UNION, be presented as outlined below and settlement sought at any one of the steps indicated.

    (d)    It is recognized that the LOCAL REPRESENTATIVES may process a grievance on behalf of an EMPLOYEE or group of EMPLOYEES even though such EMPLOYEES do not instigate the grievance.

    (e)    After a REPRESENTATIVE has referred a grievance to the COMPANY for adjustment, the COMPANY will not discuss the matter with the EMPLOYEE involved nor adjust the grievance pending settlement with the UNION.

37

Article 8

2    Disciplinary Matters

(a)    Any grievance involving the suspension or DISMISSAL of an individual EMPLOYEE shall be submitted in writing to the COMPANY'S Local BARGAINING AGENT within fifteen (15) standard working days after the UNION receives notice of the suspension or DISMISSAL. If such a grievance is not submitted within the fifteen (15) day period, the matter shall be considered closed.

(b)    The COMPANY shall submit a written answer to the grievance within ten (10) standard working days of the receipt of the grievance. If the grievance is rejected in a timely manner or, if such an answer is not submitted within the ten (10) day period, the grievance shall be considered rejected and the grievance procedure shall be exhausted.

(c)    In the event the COMPANY determines that circumstances warrant, it may issue a "paper suspension" in lieu of an actual suspension. In such case, the COMPANY will specify the amount of time off that would have applied but the EMPLOYEE shall lose no time or pay as the result of such action.

    (1)    The COMPANY and the UNION agree that a "paper suspension" shall carry precisely the same impact as an actual suspension with regard to progressive discipline. The parties also agree that the imposition or failure to impose a "paper suspension" in lieu of an actual suspension shall not constitute a precedent with regard to any other case.

    (2)    In the event the UNION wishes to challenge the imposition of a paper suspension it may do so by filing a written grievance specifying the precise grounds for its challenge. The action shall not be subject to arbitration, however, unless and until the EMPLOYEE is

38

later DISMISSED by the COMPANY. Should that occur, and the case is otherwise arbitrable, the UNION, in contesting the DISMISSAL in arbitration, may also contest the "paper suspension" but only on the grounds raised in its written grievance.

3    Interim Status

(a)    Any grievance involving the INTERIM STATUS suspension of an individual EMPLOYEE shall be submitted in writing to the COMPANY Local BARGAINING AGENT within fifteen (15) standard working days after the LOCAL UNION receives notice of the suspension. If such a grievance is not submitted within the fifteen (15) day period, the matter shall be considered closed.

(b)    The COMPANY shall submit a written answer to the grievance within ten (10) standard working days of the receipt of the grievance. If the grievance is rejected in a timely manner or, if such an answer is not submitted within the ten (10) day period, the grievance shall be considered rejected and the grievance procedure shall be exhausted.

4    Local Contract Interpretation Issues

(a)    It is the desire of the parties that grievances involving local contract interpretation issues be settled informally between the REPRESENTATIVE and a First Level Supervisor (Step 1) or between not more than two REPRESENTATIVES and a Second Level Supervisor (Step 2) or between not more than two REPRESENTATIVES and a Third Level Supervisor (Step 3) without a formal written procedure. Grievances so presented shall be answered within two (2) standard working days at Steps 1 and 2 and within five (5) standard working days at Step 3, following the date of presentation by the UNION.

Article 8

(b)     If a satisfactory settlement cannot be reached informally at Steps 1, 2 or 3 and the UNION wishes to process the grievance further, the grievance shall be presented in writing to the designated COMPANY BARGAINING AGENT.

(1)     No more than three (3) REPRESENTATIVES from each side shall participate in the grievance discussion.

(2)     Not withstanding paragraphs 4(a) and 4(b) above, the grievance must be presented in writing at the step immediately preceding the step at which the BARGAINING AGENT and the UNION discuss the grievance.

(c)     Grievances processed under the written procedure shall be answered in writing by the COMPANY within ten (10) standard working days following the date of presentation by the UNION.

(d)     When the UNION wishes to process a grievance to the next higher step, it shall present the grievance at that step within ten (10) standard working days following receipt of the COMPANY'S answer at the previous step. Otherwise the grievance shall be considered closed. If the answer to the grievance is not given by the COMPANY within the time limits provided herein, the grievance may be presented at the next step.

(e)     The parties may agree to reduce the number of grievance steps but the last step of the procedure shall require submission of the grievance in writing and discussion with both the highest level manager in the grievance chain and the designated local COMPANY BARGAINING AGENT at the same time.

5     National Contract Interpretation Issues

(a)     The parties agree to conduct regular meetings at the National Level for the purpose of discussing

40

grievances that may arise concerning National Contract items.

(b)    If at any time following initiation of a grievance, the UNION BARGAINING AGENT and COMPANY BARGAINING AGENT concur that it is appropriate to submit the grievance to the National Step, the grievance shall be presented in writing directly to the COMPANY BARGAINING AGENT.

(c)    In the event that the UNION BARGAINING AGENT and COMPANY BARGAINING AGENT do not concur that it is appropriate to submit the grievance to the National Step, the parties shall exhaust the local grievance procedure described in Paragraphs 1 through 4 of this Article 8, Section A.

(d)    The UNION BARGAINING AGENT may present a grievance to the National Step not later than 60 days following receipt of the COMPANY BARGAINING AGENT'S written answer to a grievance. If a grievance is neither presented to the National Step nor to Arbitration in accordance with the provisions of ARTICLE 9 - ARBITRATION of the applicable General Agreement during said 60 days, the matter shall be considered closed.

(e)    All grievances submitted to the National Step shall be submitted using the form attached hereto as Appendix 8-A and shall contain reference to the nature of the dispute and reasons therefore, including reference to the specific provision or provisions of the General Agreement in dispute. All documents used during the local grievance process shall be included with the submission.

(f)    A grievance submitted to the National Step shall be placed on the agenda for the next regular scheduled meeting on National Contract items.

(g)    The COMPANY shall provide a written answer to the grievance within twenty (20) standard working

41

Article 8

      days following the discussion of the grievance at the National Step.

(h)    In the event that any grievance that is submitted to the National Step is not finally resolved to the satisfaction of the parties, either party may submit such grievance to Arbitration (provided the issue is otherwise subject to the provisions of said ARTICLE 9, ARBITRATION) during the 60-day period following the date of the COMPANY'S written answer to the grievance following discussions at the National Step.

Number of UNION REPRESENTATIVES and Pay Treatment

      A REPRESENTATIVE shall be paid at his or her ADJUSTED RATE plus applicable NIGHT WORK and 7-DAY COVERAGE BONUSES for time lost from assigned COMPANY duty when conferring with Management during such REPRESENTATIVE'S SCHEDULED DAILY TOUR, and for such time while attending a meeting between a supervisor and an EMPLOYEE in which discipline is to be announced, however, the following limitations shall ordinarily apply:

| Meetings With | Number of Manufacturing P&M And Tier REPRESENTATIVES Paid |
|---|---|
| 1st Level Managers | 1 |
| 2nd, 3rd Level Managers | 2 |
| 4th or higher Level Managers | 3 |
| COMPANY BARGAINING AGENTS | 4 |

| Meetings With | Number of RDS&S REPRESENTATIVES To Be Paid |
|---|---|

42

APPENDIX 8-A

**NATIONAL STEP GRIEVANCE SUBMISSION**

To: National Step Grievance Committee

The following grievance is submitted to the "National Step":

Local Grievance Number: _____

UNION: CWA _____ Local Number _____

Lucent Technologies Location:
_____

Disputed Contractual Provision:

Article No. ____ Title: _____ Paragraph: ____

Summary of Issue:
_____
_____
_____
_____

Submitted by:

Name _____ Date _____

All documentation used for local grievance procedure must be included with this submission form.

Send submissions to:

| CWA | Lucent Technologies Inc. |
|---|---|
| M. J. Sherman | Steve Muscat |
| Staff REPRESENTATIVE | Workforce Relations Director |
| CWA | Lucent Technologies Inc. |
| 501 3rd Street, N.W. | 600 Mountain Avenue |
| Suite 200 | Room 2A-366 |
| Washington, DC 20001-2797 | Murray Hill, NJ 07974 |

51

Article 9

**ARTICLE 9 – ARBITRATION**

1    General

If, at any time, a difference arises between the COMPANY and the UNION regarding the true intent and meaning of a provision under this Agreement, or a question as to the performance of any obligation hereunder, the grievance procedures set forth in Article 8 (Grievance Procedure) shall be employed in an effort to settle said differences. If the grievance procedures do not result in settlement of the differences, the UNION may institute proceedings pursuant to this Article to resolve the dispute in question; it being understood that the right to require arbitration extends only to matters expressly set forth in this Article and which are not otherwise expressly excluded from arbitration.

(a)    The Arbitrator shall have no authority to include in the award an obligation for the COMPANY to make any retroactive adjustment of pay, for more than six (6) months (plus any time that the processing of the grievance or arbitration was delayed by the COMPANY) after the date of the filing of the appeal to arbitrate.

(b)    If, at any time, a dispute arises between the COMPANY and the UNION as to whether an EMPLOYEE was dismissed, demoted or suspended for just cause, the grievance procedures set forth in Article 8 (Grievance Procedure) shall be employed in an effort to settle the dispute. If the grievance procedures do not result in settlement of the dispute and the EMPLOYEE has nine (9) months or more of NET CREDITED SERVICE, the UNION may institute proceedings pursuant to this Article to resolve the dispute in question.

2    Election to Arbitrate

Within sixty (60) calendar days after completion of the formal grievance procedure set forth in Article 8 (Grievance Procedure), the UNION may elect to submit a grievance, which is otherwise subject to arbitration under the terms of

52

this Agreement, to arbitration for final decision in accordance with the procedures herein set forth. Such election shall be by written notice to the COMPANY Workforce Relations Vice President/BARGAINING AGENT. The written notice shall state the specific grievance and issue to be arbitrated and the contractual provision(s) involved, if any, as well as the remedy sought. For purposes of calculating the above sixty (60) day time period, the formal grievance procedure shall be deemed completed as of the date of the COMPANY'S written decision at the final step of the grievance procedure. (The following shall apply to Operational Employees Only); If within sixty (60) calendar days following the date of the COMPANY'S receipt of the notice of election to arbitrate, no arbitrator has been mutually agreed upon according to the procedures set forth herein, and within one hundred twenty (120) calendar days following the notice of election to arbitrate no application has been made to the American Arbitration Association as provided in Paragraph 3(b), then, absent a mutual extension of time agreement signed by the UNION and the COMPANY, such grievance and the election to arbitrate will be considered closed and the grievance shall not be arbitrable.

3    Selection of an Arbitrator

   (a)    Any matter submitted to arbitration shall be heard and determined by a single impartial arbitrator mutually selected by the UNION and the COMPANY. The parties shall agree to a master list composed of fifty (50) arbitrators from which panels shall be arranged and arbitrators selected. Arbitrators may be removed from the master list by written notice from either party to the other. Replacement of an arbitrator removed from the master list (either by death of the arbitrator or in accordance with this subparagraph) shall be by mutual agreement of the parties.

   (b)    If no arbitrator has been mutually agreed upon within sixty (60) days following the date of the COMPANY'S receipt of the notice of election to arbitrate and no extension of time has been mutually

53

Article 9

agreed upon, the UNION may, within the following sixty (60) day period, apply to the American Arbitration Association to obtain a list of three (3) arbitrators (all of whom will be members of the National Academy of Arbitrators). One (1) of the three (3) arbitrators on this list will be selected by the parties. If this selection cannot be made, the American Arbitration Association will appoint one (1) of the three (3) arbitrators from the list referenced above to hear the case.

(c)     The compensation and expenses of the arbitrator and the general administrative expenses of the arbitration shall be borne equally by the COMPANY and the UNION. Each party shall be responsible for payment for time consumed by and the expenses of its REPRESENTATIVES and witnesses.

4   Conduct of Hearing and Decision of Arbitrator

(a)     The parties agree to commence hearings as expeditiously as possible, but in no event later than one hundred eighty (180) calendar days after the selection of an arbitrator.

(b)     The arbitrator shall be confined to the issues submitted for decision and shall not, as a part of any decision, impose upon the parties thereto any obligation to arbitrate on a subject which is not arbitrable pursuant to the terms of this Agreement as a subject for arbitration.

(c)     The arbitrator shall not have authority or jurisdiction: (1) to add to, subtract from, modify, or disregard any provision of this Agreement; (2) to establish or determine any new wage rate, job classification or job differential; or (3) to deal with any grievance unless it involves a specific instance of action or failure to act with respect to an EMPLOYEE or group of EMPLOYEES.

(d)     In disciplinary cases, the arbitrator shall determine whether the discipline was for just cause.

54

(1)     In the case of DISMISSAL, the arbitrator shall have authority to mitigate or modify the discipline imposed and determine what, if any, remedy is appropriate. Any retroactive pay accorded shall be based on the EMPLOYEE'S ADJUSTED RATE plus TOUR differential, NIGHT WORK BONUS and 7 DAY COVERAGE BONUS, if applicable, less any amount, other than wages, received from the COMPANY, and any amount paid to or receivable by the EMPLOYEE as wages in other employment, and as unemployment benefits under any present or future provision of law for the period of the retroactive pay treatment.

(2)     Should the arbitrator provide for reinstatement of any discharged EMPLOYEE, calculation of interim earnings to be deducted from a back pay award will not include amounts earned by the grievant in other employment to the extent that the other employment was held while the grievant was employed by the COMPANY and to the extent such other employment is at a comparable level in terms of number of hours worked.

(3)     In case of suspension, the arbitrator shall have authority to mitigate or modify the discipline imposed and determine what, if any, remedy is appropriate. If the arbitrator awards back pay, the EMPLOYEE shall receive pay for time lost at the EMPLOYEE'S ADJUSTED RATE plus TOUR differential, NIGHT WORK BONUS and 7-DAY COVERAGE BONUS, to which the EMPLOYEE would have been entitled if not suspended.

(4)     In the case of demotion, the EMPLOYEE shall be compensated for all loss of wages

55

Article 9

due to the difference in the ADJUSTED RATES plus TOUR differential, NIGHT WORK BONUS and 7 -DAY COVERAGE BONUS.

(5)  EMPLOYEES reinstated pursuant to this Article who have previously submitted an authorization for payroll deduction of UNION dues or UNION dues equivalency shall have such amount deducted from any back pay award.

(e)  The arbitrator shall render a decision within thirty (30) calendar days after the hearing is closed (if the parties mutually agree to waive briefs) or thirty (30) days after briefs are filed and the record in the case is closed, unless the parties thereto mutually agree to an extension of such time for a decision.

(f)  In the event the arbitrator sustains a grievance and awards a remedy in accordance with either paragraphs (d)(1), (d)(3) or (d)(4) above, the COMPANY shall pay the award within thirty (30) days following receipt from the UNION of all documentation necessary to compute the payment.

(g)  The decision of the arbitrator on any matter submitted and decided in accordance herewith shall be in writing and shall be final and binding on the parties thereto as to the particular case submitted, subject to law.

5  Expedited Arbitration

(a)  In lieu of the procedures specified in Paragraphs 1 (General) through 4 (Conduct of Hearing and Decision of Arbitrator) of this Article, any grievance involving the suspension, disciplinary DISMISSAL and INTERIM STATUS of an individual EMPLOYEE, except those which also involve an issue of arbitrability, contract interpretation, or work stoppage (strike) activity and those which are also the subject of an administrative charge or court

56

Article 9

action shall be submitted to arbitration under the expedited arbitration procedure hereinafter provided within fifteen (15) calendar days after the filing of a request for arbitration. In all other grievances involving disciplinary action which are specifically subject to arbitration under Paragraphs 1(General) through 4 (Conduct of Hearing and Decision of Arbitrator) of this Article, both parties may, within fifteen (15) calendar days after the filing of the request for arbitration, elect to use the expedited arbitration procedure hereinafter provided. The election shall be in writing and, when signed by authorized REPRESENTATIVES of the parties, shall be irrevocable. If no such election is made within the foregoing time period, the arbitration procedure in Paragraphs 1 (General) through 4 (Conduct of Hearing and Decision of Arbitrator) shall be followed.

(b)     As soon as possible after this Agreement becomes final and binding, a panel of at least three (3) arbitrators shall be selected by the parties. Each arbitrator shall serve until the termination of this Agreement unless his or her services are terminated earlier by written notice from either party to the other. The arbitrator shall be notified of his or her termination by a joint letter from the parties. The arbitrator shall conclude his or her service by settling any grievance previously heard. A successor arbitrator shall be selected by the parties. Arbitrators shall be assigned cases in rotating order designated by the parties. If an arbitrator is not available for a hearing within ten (10) working days after receiving an assignment, the case will be passed to the next arbitrator. If no one can hear the case within ten (10) working days, the case will be assigned to the arbitrator who can hear the case on the earliest date.

(c)     The procedure for expedited arbitration shall be as follows:

57

Article 9

(1) The parties shall notify the arbitrator in writing on the day of agreement or date of arbitration demands in suspension cases to settle a grievance by expedited arbitration. The arbitrator shall notify the parties in writing of the hearing date.

(2) The parties may submit to the arbitrator prior to the hearing a written stipulation of all facts not in dispute.

(3) The hearing shall be informal without formal rules of evidence and without a transcript. However, the arbitrator shall be satisfied himself or herself that the evidence submitted is of a type on which he or she can rely, that the hearing is in all respects a fair one, and that all facts necessary to a fair settlement and reasonably obtainable are brought before the arbitrator.

(4) Within five (5) working days after the hearing, each party may submit a brief written summary of the issues raised at the hearing and arguments supporting its position. The arbitrator shall give his or her settlement within five (5) working days after receiving the briefs. He or she shall provide the parties a brief written statement of the reasons supporting his or her settlement.

(5) The arbitrator's settlement shall apply only to the instant grievance that shall be settled thereby. It shall not constitute a precedent for other cases or grievances and may not be cited or used as a precedent in other arbitration matters between the parties unless the settlement or modification thereof is adopted by the written concurrence of the REPRESENTATIVES of each party at the last step of the grievance procedure.

58

Article 9

(6)     The time limits in (1) and (4) of this Section may be extended by agreement of the parties or at the arbitrator's request, in either case, only in emergency situations. Such extensions shall not circumvent the purpose of this procedure.

(7)     In all suspension or DISMISSAL grievances submitted to arbitration under the expedited procedures set forth herein, the arbitrator shall determine whether the discipline was for just cause. In any grievance arbitrated under the expedited procedure, the COMPANY shall under no circumstances be liable for back pay for more than six (6) months (plus any time that the processing of the grievance or arbitration was delayed by the COMPANY) after the date of the disciplinary action.

(8)     The arbitrator shall have no authority to add to, subtract from or modify any provisions of this Agreement.

(9)     The decision of the arbitrator will settle the grievance, and the COMPANY and the UNION agree to abide by such decision. The compensation and expenses of the arbitrator and the general expenses of the arbitration shall be borne by the COMPANY and the UNION in equal parts. Each party shall bear the expense of its REPRESENTATIVES and witnesses.

(10)    The time limit for requesting arbitration under this provision shall be the same as in existing procedures.

59