UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Luann Gould,

                         Plaintiff,

           – against –

Lucent Technologies, Inc.,

                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

05 CV 11118 (PBS)

**AFFIDAVIT OF LUANN GOULD IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I hereby depose and state as follows:

1.      I am the Plaintiff in this action.

2.      I am a single mother, with sole legal and physical custody of my daughter, Shelby Gould.

3.      In 2003, I was an employee of the Defendant, Lucent Technologies, Inc.

4.      On or about Saturday, May 3, 2003, Shelby became ill, with a fever and a skin rash over various parts of her body.

5.      At this time, Shelby was six years old.

6.      I called and took Shelby to the office of Greater Hampstead Family Medicine, P.C. for diagnosis and treatment.

7.      I was told to come in immediately, that this was a serious contagious condition, and that I would need to come in a separate entrance at the doctor's office for the protection of other patients at the doctor's office.

8.      Shelby was seen on May 5, 2003 by Nicole May, Physician's Assistant, under the supervision of Dr. Thomas Cammilleri.

9.      Ms. May diagnosed Shelby with chicken pox.

10.     Ms. May advised that Shelby was contagious and should not be placed near other children or adults for a few days.

11.  Ms. May prescribed Benadryl and/or Aveeno lotion for bathing Shelby's infected areas.

12.  Due to Shelby's medical condition, I requested and took May 5, 2003 and May 6, 2003 off from work under the Family and Medical Leave Act (FMLA) to care for Shelby.

13.  Due to her illness, Shelby was unable to take part in her usual activities on May 3, 4, 5 and 6, 2003

14.  I forwarded FMLA paperwork to Dr. Cammilleri's office to be filled out for my employer, Lucent.

15.  Even though Dr. Cammilleri's office filled out the FMLA paperwork and returned it to Lucent, Lucent wanted more information from the doctor's office.

16.  At Lucent's request, I asked Dr. Camilleri's office to fill out FMLA paperwork for Lucent several times between May and July, 2003.

17.  I was not given a deadline by Lucent to return the FMLA paperwork.

18.  On or about July 4, 2003, Shelby became sick with a pink and inflamed eye problem.

19.  Since it was a holiday weekend, I was unable to take Shelby to the doctor right away.

20.  I called the doctor's office on the morning of July 7, 2003 to discuss her condition and make an appointment.

21.  On July 7, 2003, I took Shelby to the doctor's office for diagnosis and treatment.

22.  Shelby was diagnosed with conjunctivitis.

23.  The doctor's office advised this condition was extremely contagious, and could be extremely serious if not treated.

24.  I was told at the doctor's office that due to Shelby's contagious condition, I must apply her medication as prescribed and keep her away from other children and adults.

25.  The doctor prescribed Erythromycin ointment for Shelby's condition, to be used daily for five days.

26.  I continued applying the medication to Shelby for the remainder of the week, which was five days.

27.   On the morning of July 7, 2003, I called in to Pyong Deletis, my supervisor at work to advise her I must be out of work on July 7, 2003 under FMLA leave to care for Shelby.

28.   At that time, my requested FMLA leave from May, 2003 approval was still pending.

29.   On July 8, 2003, I returned to work.

30.   Shelby was unable to take part in her usual activities, due to conjunctivitis, from July 4 through July 7, 2003.

31.   I continued treating Shelby by applying her medication through July 11, 2003.

32.   On or about July 8, 2003, I requested FMLA leave paperwork for July 7, 2003.

33.   On July 7, while I was on requested FMLA leave, Lucent formally denied my request for leave from May 5-6, 2003.

34.   On July 28, Lucent formally denied my request for FMLA leave for July 7, 2003.

35.   On or about July 30, 2003, after having three FMLA days from May 5-6 and July 7 denied, I was told I took too much time off from work and was subject to termination under Lucent's Absence Control Plan.

36.   During July, 2003, when my doctor was being asked to re-do forms for Margaret Blumer, no one from Lucent asked me directly about the details of Shelby's illness or Shelby's incapacitation.

37.   I was terminated on August 1, 2003.

38.   In March, 2003, I had taken FMLA time off from work due to illness. The company approved this leave.

39.   On or about October 25, 2002, I requested FMLA time off due to Shelby's illness. The company initially denied this request, but later approved it.

40.   I believe I was terminated in retaliation for requesting and taking too much FMLA time off from work.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY, AND IN ACCORDANCE
WITH FEDERAL LAW.


Luann Gould


Dated:  September 14, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Luann Gould,

                        Plaintiff,        05 CV 11118 (PBS)

            – against –

                                  **AFFIDAVIT OF NICOLE MAY IN**

Lucent Technologies, Inc.,               **OPPOSITION TO DEFENDANT'S**

                                  **MOTION FOR SUMMARY**

                 Defendant.    **JUDGMENT**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        I hereby depose and state as follows:

1.     I am a Physician's Assistant licensed to practice in the State of New Hampshire. I have been licensed since 2002.

2.     In 2002 and 2003, I was an employee of Greater Hampstead Family Medicine, P.C. I worked under the direct supervision of Dr. Thomas Cammilleri, M.D.

3.     Shelby Gould, Luann Gould's daughter, was and still is a patient at Greater Hampstead Family Medicine, P.C.

4.     I observed, diagnosed, and treated Shelby on several occasions in 2002 and 2003.

5.     On the morning of May 5, 2003, Luann Gould called in to our office to discuss Shelby's symptoms.

6.     On May 5, 2003, I saw Shelby, due to worsening symptoms after Luann Gould called in for guidance and diagnosis of Shelby's condition.

7.     On May 5, 2003, I diagnosed and treated Shelby for a rash suspicious for chicken pox.

8.     In accordance with our office policy regarding suspicious rashes, I told Shelby's mother that Shelby was potentially contagious and should stay away from children and immuno-compromised adults for 2 days.

9.     I also told Shelby's mother to see how the rash progressed. I gave her pictures and descriptions of pox lesions.

10.    Luann Gould told me that the skin rash became evident on or about May 3, 2003.

11.    Later in May, 2003, I filled out FMLA paperwork Luann Gould provided for me.

12.    I understood that the paperwork was required to document the FMLA-related illness and provide an excused absence for Ms. Gould's absence from work at Lucent.

13.    Ms. Gould asked me to re-do the paperwork and re-send it back to Lucent on several occasions in late May, June, or July.

14.    I filled out the paperwork completely and as best as I could.

15.    I have filled out FMLA forms successfully for other patients, without any problems or additional requests from the employer.

16.    On July 7, 2003, Ms. Gould called our office to inquire about Shelby's pink and inflamed eye condition.

17.    It appears our staff spoke with Ms. Gould about the eye condition, and made an appointment for Shelby that day.

18.    On July 7, 2003, I observed, diagnosed, and treated Shelby Gould for conjunctivitis, a highly contagious condition.

19.    Ms. Gould told me she or her mother had noticed Shelby's symptoms on July 4, 2003.

20.    I prescribed an antibiotic ointment, to be administered by Ms. Gould for five days.

21.    I told Ms. Gould to keep Shelby away from other children for at least 24 hours from the first dose of the antibiotic, or until purulent drainage ceased.

22.    In July, 2003, I was asked to fill out FMLA paperwork for Ms. Gould to excuse her absence from work on July 7, 2003.

23.    I filled out this paperwork.

24.    Later in September, 2003, I was asked by Ms. Gould to re-do the FMLA paperwork for Lucent because it had not been approved by Lucent.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY, AND IN ACCORDANCE
WITH FEDERAL LAW.

_Nicole May PA-C_
Nicole May PA-C

Dated: September _18_, 2006

3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
- - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                     :
Luann Gould,                                         :
                                 Plaintiff,          :      05 CV 11118 (PBS)
                                                     :
        —against—                                    :
                                                     :      AFFIDAVIT OF DR. THOMAS
Lucent Technologies, Inc.,                           :      CAMMILLERI IN OPPOSITION TO
                                                     :      DEFENDANT'S MOTION FOR
                                 Defendant.          :      SUMMARY JUDGMENT
                                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - x

I hereby depose and state as follows:

1.  I am a Medical Doctor licensed to practice medicine in the State of New Hampshire.

2.  I have been licensed to practice medicine since 1992, and I am Board Certified in
    Family Practice.

3.  In 2002 and 2003, I was the owner and operator of Greater Hampstead Family
    Medicine, P.C. During that time, I worked at the office and directly supervised office
    staff, including Physician- Assistant Nicole May.

4.  Shelby Gould was and still is a patient at Greater Hampstead Family Medicine, P.C.

5.  Nicole May observed, diagnosed, and treated Shelby on several occasions in 2002
    and 2003, under my general supervision.

6.  Luann Gould apparently called the office to schedule the May 5, 2003 appointment.

7.  On May 5, 2003, Nicole May saw Shelby, diagnosed her, and began treating her for
    rash, suspicious for chicken pox.

8.   The serious contagious or infectious period for chicken pox is 5 to 6 days, depending on incubation (10 to 21 days).

9.   On July 7, 2003, Ms. Gould apparently called our office to inquire about Shelby's eye condition. An appointment was made for July 7, 2003.

10.   On July 7, 2003, Nicole May observed, diagnosed, and treated Shelby for conjunctivitis, a highly contagious condition.

11.   Depending on the cause, conjunctivitis can be highly contagious or infectious for a period of days. If treated, it can be contagious for 24 to 48 hours.

12.   I am familiar with FMLA-1 and FMLA-2 paperwork required by Lucent and other employers.

13.   In Shelby Gould's case, telephone calls with Luann Gould made in early May, 2003 were calls made regarding a potentially serious medical condition.

14.   In Shelby Gould's case, telephone calls with Luann Gould made in early July, 2003 were calls made regarding a potentially serious medical condition.

*possible* 

15.   In my opinion, Shelby Gould's illness of chicken pox was a serious medical condition which should have qualified under FMLA in May, 2003.

16.   In my opinion, Shelby Gould's illness of conjunctivitis was a serious medical condition which should have qualified under FMLA in July, 2003.

2

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY, AND IN ACCORDANCE
WITH FEDERAL LAW.

Thomas Cammilleri, D. O.

Dated: September 15, 2006