Linda A. Harvey
Robert R. Thomas
Harvey, Kleger & Thomas
184 Pleasant Valley St. – Suite 1-204
Methuen, MA 01844
(978) 686-9800
Attorneys for Plaintiff
Luann Gould

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Luann Gould,
                                    :
                                    :
                    Plaintiff,      :      05 CV 11118 (PBS)
                                    :
          – against –               :
                                    :
Lucent Technologies, Inc.,          :
                                    :
                                    :
                    Defendant.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

Preliminary Statement…………………………………………………..2

Facts…………………………………………………………………..7

Legal Argument…………………………………………………...11

Plaintiff's Requests for Leave in May and July, 2003
Qualified under the FMLA…………………………………………11

Plaintiff's Termination was in violation of her FMLA rights…………………14

Plaintiff Has Established a Legal Claim of Retaliation………………………..15

Plaintiff's Request for Leave was covered under the SNLA……………………..18

Plaintiff's Termination was Retaliation under the SNLA………………………..19

Plaintiff's Termination was Wrongful under Common Law and
Against Public Policy…………………………………………………...19

Defendant may be Liable for Negligent or Intentional Infliction
Of Emotional Distress…………………………………………………19

Conclusion………………………………………………………………...20

**TABLE OF AUTHORITIES**

**CASES**

**Page**

Brannon v. Oshkosh B'Gosh, Inc., 897 F.Supp. 1028 (M.D. Tenn. 1995).....14

Cormier v. Littlefield, 13 F. Supp. 2d 127 (D.Mass. 1998).....................16

Duckworth v. Pratt & Whitney, Inc., 152 F.3d 1 (1st Cir. 1998)...............16

Hodgens v. General Dynamics Corp., 144 F.3d 151 (1st Cir. 1997)............15

Monica v. Nalco Chemical Co., No. CIV.A. 96-1286,
1996 WL 736946 at *2 (E.D.La.1996)...........................................16

William George v. Associated Stationers, et.al., 932 F.Supp. 1012,
(U.S.District Court,N.D. Ohio, Eastern Diviision, 1996)........................13

**RULES AND STATUTES**

29 C.F.R. s. 825.114.............................................................11

29 U.S.C. s. 2611(11)...........................................................10

29 U.S.C. s. 2612(a)(1)(C)......................................................10

Fed. R. Civ. P. 56...............................................................2

Mass. Gen. Laws ch. 149 s. 52D............................................2, 18

Preliminary Statement

Pursuant to Fed. R. Civ. P. 56, Plaintiff Luann Gould ("Gould" or "Plaintiff"), by her attorneys, Linda A. Harvey and Robert R. Thomas, submits this Memorandum of Law in opposition to Defendant Lucent Technologies Inc.'s ("Lucent" or "Defendant") Motion for Summary Judgment on the grounds that: 1) There are multiple genuine issues of material fact that require a trial; and 2) Defendant is not entitled to judgment as a matter of law.

In summary, the Plaintiff alleges that she requested and took Family and Medical Leave Act (FMLA) leave time in May, 2003 and July, 2003 to care for her daughter who had been diagnosed with chicken pox in May, 2003 and conjunctivitis in July, 2003. Plaintiff contends both leave requests were for diagnosis and treatment of her daughter's "serious medical condition" where her daughter was seen by a health care provider and was incapacitated for more than three consecutive days. As such, Plaintiff met the statutory requirements of leave under the Family and Medical Leave Act and the Massachusetts Small Necessities Leave Act, Mass. Gen. Laws c. 149 s. 52D.

Plaintiff's FMLA leave request for May 5-6, 2003 was still pending approval by Lucent on the morning of July 7, 2006 when Plaintiff called in and requested leave for July 7, 2003 on an emergency basis. Plaintiff came back to work on July 8, 2003, to find that Lucent had denied her request for May 5-6, 2003 on July 7, 2003 while she was out on leave. Plaintiff was placed on Level IV warning under Lucent's Absence Control Plan. On July 28, 2003, Lucent denied the July request for FMLA leave. The Plaintiff was then placed on Level V warning, with the possibility of termination. On August 1, 2003, the Plaintiff was terminated for alleged excessive absenteeism, and because her

most recently intended FMLA day or days did not qualify according to the Defendant.
The Plaintiff was eligible to take these days as FMLA days; she followed the same rules
and procedures as she had in her past requests for FMLA leave.  This time, however,
something had changed.  By waiting until July 7th to deny the May request for leave, the
Defendant did not provide notice of Level IV status prior to the Plaintiff's taking an
excused FMLA absence on July 7, 2003.  By waiting two months to approve or deny
leave for May, and then striking while Plaintiff was out on July 7th, Defendant set its plan
in motion whereby Plaintiff could not escape moving directly from Level III to Level V.
Even at Level V, the Defendant was not required to terminate Plaintiff; however, Plaintiff
was abruptly and wrongfully terminated on August 1, 2003.  Defendant's denial of
FMLA leave and its termination process from July 7, 2003 to August 1, 2003 contains
numerous areas of contested factual issues for which a reasonable trier of fact could find
for the Plaintiff.  This includes not only the underlying facts supporting the validity of the
excused absences, but also whether there was retaliation by which the Plaintiff was
terminated.

   One of the primary areas of factual dispute in this case is whether Ms. Gould's
leave requests qualified under the FMLA as "serious health conditions" as defined by the
FMLA and its regulations.  Defendant contends that Ms. Gould was not "incapacitated"
for more than three consecutive days on either occasion in May, 2003 and July, 2003
because her leave requests were for less than three consecutive days.  The record does not
support these contentions.   To the contrary, Ms. Gould's daughter was the party who was
incapacitated for more than three consecutive days in May, 2003 and again in July, 2003,
At her deposition, Ms. Gould was questioned about the time she took off from work, but

3

was not questioned directly about the number of days that her daughter was incapacitated for serious medical conditions. Incapacity for a serious medical condition includes the illness, diagnosis, and treatment. The Affidavits of Luann Gould, Nicole May, and Dr. Thomas Cammilleri, provided with this memorandum, clarify the factual record for purposes of summary judgment.

Plaintiff therefore contends that a reasonable person could find that the May, 2003 and July, 2003 requested absences were qualified under the FMLA. By improperly denying either FMLA request for leave, Ms. Gould was unlawfully terminated for protected activity, in violation of her FMLA rights.

Plaintiff further asserts that there numerous issues of fact which show that Lucent retaliated against the Plaintiff. These include: the timing of Lucent's denial on July 7, 2003; Margaret Blumer's predilection to disqualify Plaintiff's past requests for FMLA leave (including two requests approved under FMLA by another manager); Lucent's failure to provide notice of movement to Level IV prior to Plaintiff's requesting one additional day; Lucent's failure to suggest using SNLA time; Lucent's unwillingness to credit vacation time or excused work day time to July 7th; Lucent's failure to conduct a fair and impartial review between July 8, 2003 and Plaintiff's termination on August 1, 2003; and Pyong Deletis' characterization of Ms. Gould as not being a good worker and taking too much time off. These facts support that Lucent acted in retaliation of Plaintiff's FMLA entitlement rights. Since Lucent disputes these facts or assertions, summary judgment is not appropriate for the FMLA and the retaliation claims.

With respect to claims under the Small Necessities Leave Act (SNLA), there are genuine issues of material fact to be resolved at trial. The Defendant alleges that Plaintiff

exhausted all her SNLA time per Lucent policy.  The Plaintiff disputes receiving clear

and meaningful notice of this policy and its implications.  Even if Lucent had such a

policy, it has not been demonstrated that the Plaintiff was provided with this information,

or was ever counseled that she effectively had no SNLA leave protection.  The Plaintiff

alleges that no manager, including her supervisors or Ms. Blumer, ever counseled her

with respect to statutory protections under the Small Necessities Leave Act.  The Plaintiff

alleges that she had four hours of earned vacation time at her termination date on August

1, 2003.  Had SNLA ever been mentioned, invoked or allowed by the Defendant, the

Plaintiff could have applied four hours of paid vacation time and four hours of SNLA

time to her July 7, 2003 absence.  This would have saved her from moving to Level V

and termination.   A reasonable trier of fact could find for the Plaintiff with respect to her

SNLA claim.

Further, with respect to SNLA protection, Plaintiff argues in the alternative that

even if her daughter's medical visits do not qualify as "serious medical conditions" under

FMLA, they may qualify as protected events under the SNLA.  These are genuine issues

of material fact for trial.

Procedurally, Defendant contends that plaintiffs must file a SNLA complaint first

with the Massachusetts Attorney General's Office before bringing a civil action.  This

may be recommended but is not binding according to the Attorney General's regulations.

The clear language of the SNLA states "may" and not "must" file a complaint.

Furthermore, the Massachusetts SNLA is deemed to be a "mini-FMLA statute",

providing extra protection of up to twenty-four hours per year, yet following the FMLA

in all respects.  Under the FMLA, it is optional to file a complaint with the Department of

Labor (DOL) prior to filing a civil lawsuit. Therefore, it follows that it is optional, not required, for a Plaintiff to file a complaint with the Massachusetts Attorney General prior to filing an SNLA complaint in court. Therefore, Plaintiff's SNLA claims should not be dismissed through summary judgment as Defendant has argued.

With respect to the Plaintiff's claims for negligent and intentional infliction of emotional distress, Plaintiff does not dispute that intentional infliction claims may be precluded, as a matter of law, by the exclusivity provisions of the Massachusetts Workers Compensation Act. This may not exclude negligent infliction claims. Moreover, there are factual issues in dispute whereby these particular claims should not dismissed as a matter of law at the summary judgment stage.

Defendant's argument that the remaining claim of wrongful termination is precluded by either the FMLA or the SNLA does not have merit. The common law claim is broader and provides potentially more protection to plaintiffs than do the statutes. For this reason, the claims are not the same. While both statutes provide specific protections for employees, Defendant has argued in its motions that the Plaintiff was not entitled to SNLA protection, and was not entitled to FMLA protection due to policy restrictions and disqualification under FMLA. First, these are mixed issues of fact and law, which should not be decided on summary judgment. Second, if the FMLA and SNLA counts were to be denied on summary judgment, the Plaintiff would not have protection under those statutes and a common law claim of wrongful termination should be allowed to proceed at trial.

For these reasons, and those stated below, Defendant's motion for summary judgment should be denied in its entirety.

6

## FACTS

The Plaintiff commenced employment at Lucent as a Production Associate on October 16, 1979. Gould T. 12. The Plaintiff has a daughter, Shelby Gould, born July 22, 1997. Gould T. 16. The Plaintiff is solely responsible for Shelby's legal and physical custody. Gould Aff. #2. Plaintiff suffered numerous serious illnesses since 1996, including kidney failure and complications during her pregnancy with Shelby in 1997. Gould T. 23. Prior to 2002, Gould took many excused FMLA days off from work due to her own health conditions. Gould T. 25. Plaintiff also took unpaid leave from work to attend three major, lengthy trials: one for divorce, one for a criminal trial regarding allegations that Shelby was molested by her father, and one for a civil trial regarding the child molestation. Gould T. 28-29. Gould took many unpaid days off from work for these trials in 2000 and 2001. Gould T. 29, 47. In 2002, Gould had only six unexcused absences. In 2003, Gould had only three unexcused absences, plus three FMLA days taken that were denied by Lucent. Lucent considered all of Gould's time off when it terminated her on August 1, 2003. Campbell Aff. #6.

The Plaintiff remained employed at Lucent until August 1, 2003, when she was terminated for taking January 6-8, May 5-6, and July 7, 2003 as unexcused absences under Lucent's Absence Control Plan ("ACP"). The ACP is a five step absenteeism and discipline policy, with an employee's status starting at Level 0 (best) and increasing progressively up to Level V (worst). Gould T. 49-52. It is possible to make improvements and lower one's level from Level 2 or 1 downward. Once at Level III, it becomes increasingly difficult to make improvements from a Level III or Level IV. For example, it takes two years of no unexcused absences to revert downward from Level III

or IV. It takes one year of no unexcused absences to revert down one level while at Level II or Level I.

The Plaintiff entered 2003 on Level III under Lucent's Absence Control Plan. (Gould T. 52). At this time, Gould had four additional days of non-exempt absences before triggering action to Level 4. On January 6-8, 2003, the Plaintiff was absent from work for three days due to sickness. (Gould T. 52-53). From March 3-28, 2003, Plaintiff was out on FMLA approved leave for Shelby's sickness. (Gould T. 53). This leave was excused. (Gould T. 53).

On May 5-6, 2003, Gould requested FMLA leave to take care of her daughter, Shelby, who had chicken pox. Gould Aff. #12. Shelby's symptoms of flu and skin rash started on May 3, 2003. Gould Aff. #4, May Aff. #10, Gould T. 104-105, Gould T. 108-109. Shelby visited the doctor's office on May 5, 2003 when ill with symptoms of chicken pox. Gould T. 54., Dr. Cammilleri Aff. #7, May Aff. #6. Gould called the doctor's office before and after making the doctor's appointment during this time to talk to nurses and/or staff regarding Shelby's condition and treatment. Gould Aff. #6, 7. Shelby was presumed to be contagious. May Aff. #8., Dr. Cammilleri Aff. #8. Gould was told how to care for Shelby, and to keep her away from other children and adults for at least 24 to 48 hours. May Aff. #7-10. From May 3 to May 6, 2003, Shelby was sick, was unable to play or take part in her usual activities. Gould Aff. #13. Shelby was kept isolated from other children. Gould Aff. #10. On May 7, 2003, Shelby went back to school, and Gould went back to work. Gould T. 65.

Gould completed her portion of the FMLA paperwork for May 5-6, 2003, and sent the rest to the doctor's office to fill out. Gould Aff. #14. The doctor's office

returned the paperwork to Lucent. May Aff. #11-13. The paperwork was filled out and was not vague. May Aff. #14. The doctors' office had successfully filled out FMLA paperwork for other employers in the past. May Aff. #15. Gould did not have control over what the doctor's office would write or when it would return the form to Lucent.

In May and June, Lucent asked Gould to have her doctor re-submit FMLA forms. Gould Aff. #15, 16, May Aff. #13. Gould passed this request on to her doctor's office, which in turn provided Lucent with new certification. May Aff. #13, 14. Lucent never provided Gould with a deadline for returning the FMLA paperwork. Gould Aff. #17.

Margaret ("Peggy") Blumer, Lucent's Benefit Consultant, interpreted the doctor's paperwork as failing to establish that Shelby suffered from a serious medical condition on May 5-6, 2003. Gould T. 58. Blumer was located in New Jersey. Gould T. 58. Blumer usually communicated by phone or email to Pyong Deletis, Gould's supervisor, or Human Resources. Blumer did not ask Gould directly to explain whether Shelby was sick or incapacitated for more than three days. Blumer wanted "more documentation" from the doctor. Gould Aff. #15. Gould did not understand what additional information Blumer wanted from her or her doctor. Pyong Deletis called Blumer on the morning of July 7, 2003 and told her that Gould had taken another FMLA day. Gould T. 71. The doctor's forms were deemed by Blumer to be inadequate. On July 7, 2003, Blumer denied Gould FMLA leave for May 5-6, 2003. Gould Aff. #32. Gould received notification of the denial on July 8, 2003, upon her return to work.

On the morning of July 7, 2003, Gould requested an FMLA leave for one day, to care for her daughter who had conjunctivitis, a significantly contagious condition. Gould Aff. #27. Gould first noticed her daughter's eye irritation on July 4, 2003. Gould Aff.

#18.  Over the holiday weekend, Shelby's condition worsened.  Gould T. 102.  Shelby was seen by the doctor's office on July 7, 2003, diagnosed with conjunctivitis, and given a prescription antibiotic ointment.  Gould Aff. #21, 22, 25, May Aff. #18, 20.  Gould applied the ointment to her daughter's eye for the rest of the week, through July 11, 2003. Gould Aff. # 25, 26.  Gould was told her daughter was contagious and could not attend school for at least 24 hours.  May Aff. # 21, Cammilleri Aff. #11.  Shelby was sick with conjunctivitis from July 4 to July 7, 2003.  Gould Aff. #30., Gould T. 104.  During this time, Shelby could not take part in her usual activities of play and school.  Gould Aff. #30.  Shelby received prescription medication from July 7 to July 11, 2003, which was applied by Gould.  Gould Aff. #31.  No one from Lucent asked Gould directly for this information.  Gould Aff. #36.

Blumer wrote to Gould on or about July 14, 2003, advising her that the July 7, 2003 absence remained "Not Qualified" under FMLA, and that "Childhood illness does not qualify under the FMLA, unless there are complications."  Blumer also enclosed excerpts and definitions from the FMLA regulations, which do not appear to support her explanation.  This explanation was used again in notices of future denials, including a post-termination letter dated September 19, 2003.

Blumer emailed to Cynthia Williams at Lucent on July 14, 2003 regarding "FMLA possible problem."  She wrote that Gould's two previous absences, were approved by Lucent under FMLA (presumably March 3-28, 2003 and October 25-27, 2002), "but I don't think should have been.   I think a precedent has been set and she [Gould] is basically using FMLA as a substitute for child care."  Gould Depo. Exhibit 16, Gould T. 87, 91.

Gould was informed on July 28, 2003 by Ms. Blumer that her July 7, 2003 absence did not qualify under FMLA, as there were "no complications". This led directly to Gould's termination. Gould was placed on Level V probation on July 30, 2003. (Blumer Aff. #8). Gould was then terminated on August 1, 2003 by the Lucent Absence Control Plan Board. Gould T. 81. The Board had the discretion to keep Gould on Level V without termination. This had been done once in the past for another Lucent employee, but not for Gould. Campbell Aff. #6, Gould T. 113. The Board considered Gould's prior overall attendance record. Campbell Aff. #6. Gould had requested, taken, and been approved for significant amounts of FMLA time over the years. Gould was also required to be present and testify in court, and missed significant amounts of work in 2000 and 2001.

At her termination, Gould was eligible for one remaining paid Excused Work Day ("EWD") in 2003. Gould had also accrued four hours of vacation time. Gould T. 100. Even though Gould had available time to use, she was terminated. Gould T. 81. Deletis does not remember discussing the SNLA with Gould. Deletis T. 41. Gould was never informed about her possible use of SNLA time until after her termination on August 1, 2003. Gould T. 89, 111.

After her termination, Gould filed a request for a grievance hearing, which was held on September 19, 2003. At this hearing, Lucent again denied Gould's request to qualify her May and July leaves under FMLA. Lucent's senior manager, Mark Savelloni, did not conduct an investigation but deferred to the benefits and labor expert, Blumer, who made the initial determinations. Gould was not represented by a private attorney at this hearing.

**LEGAL ARGUMENT**

**Plaintiff's Requests for Leave in May and July, 2003 qualified under FMLA**

The FMLA provides up to twelve weeks leave time during a twelve month period for care of a sick child if the child has a "serious health condition" within the meaning of 29 U.S.C. s 2612(a)(1)(C). A serious health condition is defined as "an illness, injury, impairment or physical or mental condition that involves – (A) impatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. s 2611(11).

"Continuing treatment by a health care provider" is explained under the regulations and "includes any one or more of the following: 1) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves: A) Treatment two or more time by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g. physical therapist) under orders of, or on referral by, a health care provider; …" 29 C.F.R. s 825.114(a). "Treatment" is defined as including "(but not limited to) examination to determine if a serious health condition exists and evaluations of the condition." 29 C.F.R. s. 825.114(b).

The FMLA statute was passed in order to protect employees with a serious health condition or direct family members, including parents or children, with a serious health condition. Here, the incapacity refers to the Plaintiff's daughter, the person with the serious health condition, not the employee. Shelby Gould, Plaintiff's daughter, who was

six years old at the time, was noticed to have flu and rash symptoms (suspicious for chicken pox) starting May 3 and lasting through May 6, 2003.  Gould Aff. #4.  Similarly, in July, 2003, Shelby Gould exhibited symptoms of eye problems on July 4, 2003.  Treatment lasted well after her doctor's visit on July 7, 2003.  Gould Aff. #25, 26.  "Treatment" under FMLA includes diagnosis, continuing treatment, and recovery.  After July 7, Ms. Gould continued to administer the prescription antibiotic ointment to Shelby for the remainder of the week, through July 11, 2003.  Gould Aff. #26.

In both instances, Shelby went to a doctor and was determined to have symptoms which indicated a potential serious medical condition.  Both illnesses, including diagnosis, treatment and recovery, lasted for more than three consecutive days.  Both illnesses involved an ongoing contagion which good medical judgment and sound public health policy require quarantine of the child.  For conjunctivitis, the contagion is considered so serious as to require quarantine away from children in public places, such as school, day care, or camp, by New Hampshire state law.

In its Memorandum, Defendant references a December 2, 1996 Department of Labor opinion letter (Def's Exhibit D).  This opinion letter is not binding authority.  The letter refers to employees who stay at home for a week or more with a child who has chicken pox, but has no "complications" related to the illness. The letter opines that FMLA leave is not entitled due to "no continuing treatment by a health provider".  At the time the opinion letter was written, it was assumed that chicken pox, like flu, was not generally considered a serious health condition under the FMLA. However, the DOL letter states repeatedly throughout its question and answer sections that the circumstances of each case must be considered to determine whether a "serious

health condition" is met. Blumer's reliance on the "no complications" advice of the DOL opinion letter was misplaced, as she did not consider or take reasonable steps to inquire about the relevant facts and circumstances surrounding the "incapacity" and the illness. Further, the section of the opinion letter from which Blumer quoted concerned an example of chicken pox; however, she used the "no complications" as a basis for denying Shelby's conjunctivitis as a "serious medical condition", even though it met the statutory requirements.

Regardless of the DOL opinion letter, there is, importantly, case law on this subject with higher legal authority and holdings which are contrary to Ms. Blumer's FMLA denials. For example, in the case of William George v. Associated Stationers, Mr. George saw a doctor for chicken pox and was told to remain out of work until his rash cleared up. George was terminated under his employer's attendance policy. The Federal District Court of Ohio held that (1) chicken pox qualified as a "serious health condition" under FMLA, and (2) an employer's attendance policy could not be applied to decrease an employee's rights under FMLA. The Court granted summary judgment for the Plaintiff employee as to liability, and held a hearing on damages. William George v. Asociated Stationers, et al., 932 F.Supp. 1012, (U. S. District Court, N.D. Ohio, Eastern Division, 1996).

Moreover, the case of Brannon v. Oshkosh B'Gosh, Inc. is relevant with respect to absence from work due to the illness of the plaintiff's child. The child had symptoms of fever, sore throat, runny nose, and vomiting. She was ill for three days before the parents took her to the emergency room for diagnosis. The child was treated with an antibiotic and over the counter medication, and did not see a health care provider a

14

second time. The <u>Brannon</u> court concluded the child was "incapacitated" for more than

three consecutive days and had "a serious medical condition" under the FMLA. <u>Brannon</u>

<u>v. Oshkosh B'Gosh, Inc</u>. 897 F.Supp. 1028 (M.D. Tenn. 1995).

The holdings in <u>George</u> and <u>Brannon</u> are directly on point supporting Gould's

right to request May 5-6 and July 7, 2003 as FMLA-qualifying days. As demonstrated by

the evidence to date, Gould has demonstrated that Shelby's conditions were "serious

medical conditions" where she was "incapacitated" for more than three consecutive days,

and Plaintiff's absences for May 5-6 and July 7, 2003 should have qualified under the

FMLA. As there are genuine issues of material fact at issue, the Defendant's motion for

summary judgment must be denied.

<u>Plaintiff's Termination was in violation of her FMLA rights.</u>

The Plaintiff used an estimated twenty or so days in March, 2003 which counted

toward her twelve weeks of unpaid FMLA leave time during calendar year 2003.

Plaintiff had the remainder of 12 weeks as eligible FMLA time, if needed. Plaintiff was

terminated because her May, 2003 and July, 2003 leave time was determined to be non-

qualifying under FMLA. If either instance was an incorrect determination, Plaintiff

should not have been charged under Lucent's Absence Control Plan and she should not

have been terminated. Moreover, this raises genuine questions of material facts in

dispute.

<u>Plaintiff Has Established a Legal Claim of Retaliation</u>

To establish a prima facie case of retaliation under the FMLA, Plaintiff must

demonstrate: 1) that she participated in a protected activity; 2) the employer took an

adverse employment action against the Plaintiff; and 3) there is a causal connection

between the protected activity and the adverse action.  Hodgens v. General Dynamics Corp., 144 F.3d 151 (1st Cir., 1997).

In Hodgens, the Plaintiff established a prima facie case of retaliation by the employer for taking time off under FMLA.  The Hodgens court was instructive in describing the FMLA as an "entitlement" containing substantive rights, and also proscriptive rights.  Id. at 159.  Proscriptive rights under FMLA provide protection in the event an employee is discriminated against for exercising those rights.  In particular, an "employer is prohibited from discriminating against employees...who have used FMLA leave."  29 CFR s. 825.220(c).  The Court opined that interfering with an employee's FMLA rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave."  Id. at 159.

Other Federal courts have addressed similar FMLA claims, and under the summary judgment standard, have concluded that summary judgment for the employer was precluded.  In Monica v. Nalco Chemical Co., No. CIV.A. 96-1286,1996 WL 736946, at *2 (E.D.La.1996), the fact that one of six absences that employer used as a basis for terminating plaintiff for excessive absenteeism was an FMLA-covered absence created a genuine issue of material fact that his discharge was in retaliation for the FMLA-covered leave. In Cormier v. Littlefield, 13 F. Supp. 2d (D.Mass.1998), the plaintiff's allegation he was fired because he exercised his rights under FMLA were sufficient to state an FMLA claim and avoid summary judgment.  In Duckworth v. Pratt & Whitney, Inc., 152 F.3d 1 (1st Cir., 1998), the plaintiff alleged he had been re-hired by the same company because he had exercised his FMLA rights to take medical leave in the past.  The Appeals Court overturned the summary judgment decision for the employer,

holding that a broad interpretation of "employee" (to include past and present employees) was required in order to further the purposes of the FMLA.

Here, Gould engaged in protected activity, as both the May, 2003 and July, 2003 leave times qualified under the FMLA.   Lucent took its first adverse action on July 7, 2003, disciplining the Plaintiff and moving her to Level IV on the same day she was taking another requested FMLA day.  Lucent had held its decision open for about two months, and did not provide Plaintiff with a deadline.  In the past, Gould's October, 2002 FMLA denial for a short leave had been rescinded months later and allowed as FMLA leave.  Further, the employer continued its adverse action by discouraging the use of past and future FMLA leave by denying the July 7, 2003 day.  The Defendant can not claim as a defense that since FMLA leave in the past was granted, it would not deny it on future occasions.  While past FMLA requests may not have been counted against the Plaintiff, the May and July requests for leave certainly were counted against the Plaintiff, and directly led to her termination.

The Defendant also claims it gave Plaintiff four separate opportunities to present "proper documentation" establishing that her May leave qualified under the FMLA.  The Plaintiff sent the forms on to her health care provider who filled out the forms sufficiently.  Ms. Blumer, however, did not find the documentation to be sufficient because, as she wrote, "there must be complications for a child to qualify for FMLA." These are questions of fact.   At no time did Blumer request a second medical opinion, which was Lucent's right under the regulations.  The company continued to defer to Ms. Blumer's expertise in this area.  Blumer's FMLA determinations resulted in the

Plaintiff's termination, the filing of this lawsuit, and the ongoing factual disputes over FMLA qualification for May 5-6 and July 7, 2003.

In further support of retaliation, Pyong Deletis demonstrated that Lucent's reason for termination was pretextual. It was not an "objective" termination pursuant to the Absence Control Plan. Gould was terminated because Lucent managers believed she had taken far too much FMLA time in the past. Margaret Blumer was not going to allow that anymore. If it were left to her to decide, Blumer would have denied Gould's previously approved FMLA leave from 2002 and 2003. In addition, Deletis herself was biased against the Plaintiff. The Pyong Deletis deposition testimony indicates that Ms. Deletis thought the Plaintiff, who she supervised, was not a good worker. Deletis T. 53. Deletis also viewed the Plaintiff as taking too much time off from work. Deletis T. 53. Even though Deletis pretended she was helping Gould keep her job, Deletis was part of the management group that terminated Gould. The movement of Plaintiff to Level IV on July 7, 2003 and her subsequent termination was directly related to taking July 7, 2003 under the FMLA. The Plaintiff was specifically terminated under the Plan for taking the May leave time and July 7 leave time under FMLA. It is suspect that the Defendant had the right to suspend the Plaintiff, keep her on Level 4 without termination, but chose the maximum punishment of termination. Allegations of pretext and bias are questions of fact to be resolved at trial. Therefore, the Defendant's motion for summary judgment must be denied.

Plaintiff's Request for leave time was covered under the Small Necessities Leave Act.

The Defendant's numerous managers, human resources personnel, and Margaret Blumer, with alleged expert authority over FMLA never discussed Plaintiff's substantive

rights under SNLA or its alleged substitution of rights under SNLA. This statute is commonly understood as providing up to three extra days per year (taken in two hour minimum increments) to take care of routine appointments for health or school for an employee, her parents, or children. The July 7, 2003, May 5-6, 2003, or even January 6-8, 2003 days taken by the Plaintiff may have qualified under SNLA as a routine medical appointment for herself or her child. These are genuine questions of material fact. Plaintiff's last supervisor, Ms. Deletis, who claimed to want to help Plaintiff with her leave paperwork and help save her job (Deletis T. 33) never told her about SNLA. The Human Resources personnel, and Margaret Blumer, based in New Jersey, never came forward with the possibility of using SNLA time off in 2003 to save Plaintiff's job from the termination process. These are also genuine issues of material fact. Defendant's summary judgment motion must be denied.

Plaintiff's Termination was retaliation under the Small Necessities Leave Act.

The Plaintiff was ultimately terminated because of taking July 7, 2003 as an "unauthorized" absence under FMLA. The SNLA tracks the FMLA and its regulations. For summary judgment purposes, if a rational fact-finder can find that either the May 5-6, 2003 leave or the July 7, 2003 leave were properly taken under FMLA, yet denied by Lucent, a violation would lie for both FMLA and SNLA.

The Plaintiff's burden of proving a prima facie case of retaliation under SNLA would be the same as under the FMLA, as discussed above. Genuine issues of material fact exist regarding Defendant's rules and procedures with respect to SNLA time, what Plaintiff was told about SNLA, and what information about SNLA was withheld from Plaintiff in 2003 during her "counselings" and termination process.

Plaintiff's Termination was Wrongful under common law and against public policy.

The FMLA and SNLA statutes, while providing some protection to some employees, under certain circumstances, have strict eligibility requirements, and are not comprehensive remedial statutes protecting people in the same broad fashion, as, for example, an age discrimination statute. The Defendant incorrectly relies on Melley v. Gillette Corp. This Defendant has attempted to show how the Plaintiff is not eligible for protection under the FMLA and the SNLA, yet at the same time, argues she may not pursue a common law claim of wrongful termination. There are relevant and material factual issues in dispute with regard to the level of protection offered by the FMLA and SNLA, under her specific circumstances. Since there are material facts in dispute, the common law claim should not be dismissed at the summary judgment stage.

The Defendant may be liable for negligent or intentional infliction of emotional distress.

There are numerous issues of material fact to be determined with respect to the interplay between the facts in this case and the applicability of the exclusivity provisions of the Workers' Compensation Statute. While it appears generally that case law may favor barring plaintiffs' claims for intentional infliction of emotional distress arising out of employment, it does not exclude all negligent infliction of emotional distress claims. CITE. Further, there may be genuine factual or legal issues in dispute in this particular matter which would not bar either claim from being heard at trial.

CONCLUSION

Based on the foregoing, there are numerous issues of material fact that are in dispute with respect to the Plaintiff's FMLA claim, her SNLA claim, retaliation claims, and common law claims. A reasonable fact-finder could find in favor of the Plaintiff on

all of the counts in this lawsuit.  The remedial nature of the FMLA and SNLA requires a

broad reading and liberal interpretation of the statutes and regulations to protect those

eligible under the statutes.   Like other employment disputes, with related retaliation

claims, this lawsuit contains numerous genuine issues of material fact that it can not and

should not be decided on summary judgment.  Therefore, Defendant's Motion for

Summary Judgment should be dismissed in its entirety.


                              Respectfully Submitted,


                              HARVEY, KLEGER & THOMAS


                              By:      /s/ Robert R. Thomas

                              Linda A. Harvey (547994)
                              Robert R. Thomas (639402)
                              184 Pleasant Valley St. – Suite 1-204
                              Methuen, Massachusetts 01844
                               (978) 686-9800
                              Attorneys for Plaintiff Luann Gould

Dated: September 18, 2006