Evan J. Spelfogel (474440)
Robyn Ruderman (Admitted *pro hac vice*)
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177-1211
(212) 351-4500
Attorneys for Defendant

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LUANN P. GOULD,<br>Plaintiff,<br>– against –<br>LUCENT TECHNOLOGIES, INC.,<br>Defendant. | <u>ORIGINAL FILED VIA ECF</u><br>05 CV 11118 (PBS) |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1

LEGAL ARGUMENT ..... 3

POINT I PLAINTIFF'S FAILS TO PROVIDE ANY EVIDENCE DEMONSTRATING THAT HER LEAVE IN MAY AND JULY 2003 QUALIFIED UNDER THE FMLA OR SNLA ..... 3

A. Plaintiff Fails to Qualify for FMLA Leave ..... 3

B. Plaintiff fails to Qualify for SNLA Leave ..... 7

POINT II PLAINTIFF CANNOT ESTABLISH A CLAIM OF RETALIATION ..... 8

POINT III PLAINTIFF'S CLAIMS OF WRONGFUL TERMINATION AGAINST PUBLIC POLICY ARE BARRED BY THE FMLA AND SNLA ..... 10

POINT IV PLAINTIFF'S CLAIMS FOR INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ARE BARRED BY THE EXCLUSIVITY PROVISIONS OF THE WORKERS' COMPENSATION ACT ..... 11

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

## CASES

Baldwin-Love v. Electronic Data System Corp., 307 F. Supp. 2d 1222 (M.D. Ala. 2004) ............3

Bell v. Jewell Food Store, 83 F. Supp. 2d 951 (N.D. Ill. 2000)......................................................5

Boyd v. State Farm Insurance Cos., 158 F.3d 326 (5th Cir. 1998).................................................3

Brannon v. Oshkosh B'Gosh, Inc., 897 F. Supp. 1028 (M.D. Tenn. 1995) ..................................5

Cash v. Smith, 231 F.3d 1301 (11th Cir. 2000)..............................................................................3

Chaffin v. Carter Co., No. Civ. A. 96-2127, 1998 WL. 19624 (E.D.La. Jan. 20, 1998.)................9

Collins v. Merck-Medco RX Services, of Texas, L.L.C., No. 300CV1852-X, 2001 WL. 1142794 (N.D. Tex. Sept. 24, 2001)..........................................................................................8

Doe v. Purity Supreme, Inc., 422, Mass. 563, 4664 N.E.2d 815 (1996) .....................................11

Evans v. Henderson, No. 99 C 8332, 2001 WL. 109771 (N.D. Ill. Feb. 5, 2001)..........................9

Green v. Wyman-Gordon Co., 422 Mass. 551, 664 N.E.2d 808 (1996) ......................................11

Harrington v. Boysville of Mich. Inc., No. 97-1862, 1998 WL. 252755 (6th Cir. May 13, 1998) ..........................................................................................................................3

Joslin v. Rockwell International Corp., 8 F. Supp. 2d 1158 (N.D. Iowa 1998)..............................5

Lennon v. Walsh, 798 F. Supp. 845 (D. Mass. 1992)C ..........................................................11

Melley v. Gillette Corp., 19 Mass. App. Ct. 511, 475 N.E.2d 1227 (1985), aff'd, 397 Mass. 1101, 491 N.E.2d 252 (1986) ..........................................................................................10

Nagy v. Tee Vee Toons, Inc., No. 03 Civ. 7838, 2004 WL. 1059512 (S.D.N.Y. May 12, 2004) .........................................................................................................................9

Olsen v. Ohio Edison Co., 979 F. Supp. 1159 (N.D. Ohio 1997) .................................................5

Parisi v. Trustees of Hampshire Coll., 711 F. Supp. 57, 63 (D. Mass. 1989) ..............................11

Schmittou v. Wal-Mart Stores, Inc., No. Civ. 011763, 2003 WL. 22075763 (D. Minn. Aug. 22, 2003) .............................................................................................................8

**STATUTES**

29 C.F.R. § 825.305(d) ....................4

29 C.F.R. § 825.306 ....................4

29 U.S.C. § 2613(b) ....................4

29 U.S.C. § 2612-13 ....................3

Mass Gen. Laws ch. 149, § 150 ....................7

Mass. Gen. Laws ch. 149, § 52(d)(c) ....................2

Mass. Gen. Laws ch. 149, § 52D(b) ....................8

Mass Gen. Laws ch. 149, § 52D(c) ....................8

Mass Gen. Laws ch. 149, § 52D(f) ....................7

**PRELIMINARY STATEMENT**

Defendant Lucent Technologies Inc. ("Lucent" or "Defendant"), by its attorneys, Evan J. Spelfogel and Robyn Ruderman of Epstein Becker & Green, P.C., submits this reply memorandum of law in further support of its motion for summary judgment.

To establish that her daughter suffered from a "serious health condition," in her answering papers, Plaintiff belatedly claims that her daughter was incapacitated for more than three days with both the chicken pox and conjunctivitis. In support of her claims, Plaintiff submits affidavits from her daughter's medical providers, Dr. Thomas Cammilleri and Physician Assistant Nicole May. On their face, neither of these establish that the daughter suffered from any FMLA-qualifying condition. Further, Lucent's actions in denying FMLA and SNLA must be evidenced by the documentation and certifications before it at the time in 2003, not by information now submitted three years after the fact.

Dr. Cammilleri cannot even now confirm that the daughter had the chicken pox, and merely speculates that the daughter's illness of "possible chicken pox" would be a serious medical condition. In her new statement, Ms. May also fails to confirm Plaintiff's daughter had the chicken pox. Both medical providers also do not state that the daughter was incapacitated for more than three days for either the chicken pox or conjunctivitis. Nor do they state that the daughter received treatment two or more times by a health care provider or was prescribed any regimen of continuing treatment for the chicken pox as required by the FMLA.

Lucent's decisions in May and July 2003 were based on the information and certifications provided to it by Plaintiff and her health care providers at that time. None of it supported a conclusion that Plaintiff's daughter's medical condition qualified under the FMLA.

Any current speculation made by these medical providers is inconsistent with and cannot supersede documentation provided to Lucent at the time it denied the leave three years earlier.

Moreover, it is undisputed that Lucent repeatedly advised Plaintiff in the Spring and Summer of 2003 that the information and certifications then submitted failed to establish a serious medical condition, and Lucent gave Plaintiff multiple opportunities to correct the deficiencies. Nevertheless, Plaintiff never provided Lucent with additional information or certifications sufficient to establish an FMLA-qualifying condition.

As for Plaintiff's claims under the Small Necessities Leave Act ("SNLA"), Plaintiff fails to dispute the fact that neither leave request fell within one of the stated purposes for which leave may be taken under the State statute. Further, even assuming the leaves did qualify for SNLA leave, Plaintiff fails to dispute the fact that by taking all four of her personal days ("Excused Work Days" or "EWDs") before her May and July absences in 2003, she had already exhausted all of her SNLA leave. (As permitted under the SNLA, personal days are a substitute for leave under the State statute. Mass. Gen. Laws ch. 149, § 52(d)(c)).

As Plaintiff did not qualify for FMLA or SNLA, her retaliation claim must also be dismissed because she cannot establish she engaged in any "protected activity," a required element in her retaliation claim.

Further, Plaintiff concedes that her <u>intentional</u> infliction of emotional distress claims are precluded, as a matter of law, by the exclusivity provisions of the Massachusetts Workers' Compensation Act (the "WCA"). While she claims her <u>negligent</u> infliction of emotional distress claims may not be barred by the exclusivity provisions, Plaintiff fails to provide any authority in support of her position or contrary to Lucent's, which is supported by

ample case law demonstrating that both negligent and intentional claims are, as a matter of law, precluded.

Finally, Plaintiff fails to provide any authority as to why her claims for "wrongful termination against public policy" are not precluded by the FMLA and SNLA – statutes which exist to protect the very same public policy Plaintiff asserts was violated.

For these reasons, and those stated below, Plaintiff's lawsuit should be dismissed in its entirety.

## LEGAL ARGUMENT

## POINT I

## PLAINTIFF'S FAILS TO PROVIDE ANY EVIDENCE DEMONSTRATING THAT HER LEAVE IN MAY AND JULY 2003 QUALIFIED UNDER THE FMLA OR SNLA

### A. Plaintiff Fails to Qualify for FMLA Leave

An employee's right to FMLA leave is subject to medical certification requirements, and a failure to meet those requirements renders the employee's absences unprotected under the FMLA. 29 U.S.C. § 2612-13; Cash v. Smith, 231 F.3d 1301, 1307 (11th Cir. 2000) ("[employee] did not provide [employer] with certification that her medical conditions met the statutory standard, and therefore the medical leave that she did take was not under the auspices of the FMLA".); Baldwin-Love v. Electronic Data Sys. Corp., 307 F. Supp. 2d 1222, 1229-30 (M.D. Ala. 2004); ("If these uncertified, hence unprotected, absences violate an attendance policy, an employer may terminate an employee without violating the FMLA."); see also Boyd v. State Farm Ins. Cos., 158 F.3d 326, 331-32 (5th Cir. 1998); Harrington v. Boysville of Mich. Inc., No. 97-1862, 1998 WL 252755 (6th Cir. May 13, 1998).

The FMLA specifies what information must be included in the certification for it to be considered sufficient. This information includes, inter alia: (1) "the approximate date the

serious health condition commenced, and its probable duration, including the probable duration of the patient's present incapacity (defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom …", (2) "If additional treatments will be required for the condition, an estimate of the probable number of such treatments," and (3) "If a regimen of continuing treatment by the patient is required under the supervision of the health care provider, a general description of the regimen." 29 C.F.R. § 825.306; 29 U.S.C. § 2613(b).

Under the Department of Labor regulations, "The employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency." 29 C.F.R. § 825.305(d).

**1. Certification Provided by Plaintiff was Inadequate**

As highlighted in our moving papers, in 2003 Plaintiff failed to provide Lucent with any sufficient certification in support of her contentions that her daughter's alleged cases of the chicken pox and conjunctivitis qualified under the FMLA, despite, as Plaintiff admits in her opposition papers, repeated requests and opportunities to do so. [Ahern Aff. ¶ 4, 7; Blumer Aff. ¶ 4, 6-9, Exhibits A, B; D-H; Gould T. 57-59, 65, 68, 72; Deletis T. 32; Gould T. 65, 72; Ahern Aff. ¶ 7].[1]

It is undisputed that Lucent repeatedly advised Plaintiff (although only obligated to do so once under the Act) that the certification was inadequate, and, over a period of at least four months, provided her a reasonable opportunity to cure the deficiency. [Gould Aff. ¶15-16,

[1] Affidavits of Katherine Campbell, Margaret Blumer and Brian Ahern, sworn to on August 18, 2006 are referred to as "Campbell Aff.," "Blumer Aff.," and "Ahern Aff.," respectively and are annexed to Defendant's moving papers. Affidavits of Luann Gould, Nicole May and Dr. Thomas Cammilleri, dated September 18, 2006 are referred to as "Gould Aff.," "May Aff.," and "Dr. Cammilleri Aff.," respectively and are annexed to Plaintiff's answering papers. The relevant excerpts of the Deposition Transcripts of Pyong Deletis ("Deletis T.") and Plaintiff ("Gould T.") are annexed to the Affirmation of Robyn Ruderman ("Ruderman Aff.") as Exhibits A and B, respectively and was submitted in Defendant's moving papers.

May Aff. ¶13] By providing Plaintiff repeated opportunities to cure, Lucent acted above and beyond that required by statue.

**2. Affidavits by Plaintiff's Medical Providers Fail to Establish Any FMLA-Qualifying Medical Condition**

In a last minute attempt to survive summary judgment, Plaintiff now claims for the first time, in a self-serving affidavit in support of her opposition papers, that her daughter was incapacitated for more than three days with both the chicken pox and conjunctivitis because symptoms of both conditions presented themselves to her, days before her daughter was seen or diagnosed by her health care providers.

In order to demonstrate, however, that an individual is "incapacitated" (e.g., unable to work, attend school, or perform other regular daily activities) within the meaning of the FMLA, "a plaintiff employee must show that he or she was prevented from working [or doing such other regular daily activities] **based on a medical provider's assessment of the claimed condition**. It does not mean that, in the employee's own judgment, he or she should not work (or could not have worked) [or perform such other regular daily activities] because of the illness. If it were otherwise, a note from a spouse, parent, or even one's own claim that one cannot work because of illness would suffice. Given the legislative history surrounding its enactment, the FMLA cannot be understood to establish such liberal standards for its application." Olsen v. Ohio Edison Co., 979 F. Supp. 1159, 1166 (N.D. Ohio 1997) (footnotes and citations omitted; emphasis added); Joslin v. Rockwell Int'l Corp., 8 F. Supp. 2d 1158, 1161 (N.D. Iowa 1998); Brannon v. Oshkosh B'Gosh, Inc., 897 F. Supp. 1028, 1037 (M.D. Tenn. 1995) (an employee's own testimony is legally insufficient to demonstrate a serious health condition); Bell v. Jewell Food Store, 83 F. Supp. 2d 951, 959 (N.D. Ill. 2000) (plaintiff's "own statement is not enough to establish he was incapacitated: Bell must provide evidence from a medical professional or health

care provider that he was unable to work.") (citations omitted). Plaintiff's health care providers could not possibly determine whether Plaintiff's daughter was incapacitated days before they examined and diagnosed her. Moreover, they made no such certification when they examined Plaintiff's daughter in 2003. Id. at 959 (Plaintiff's doctor could not determine if Plaintiff were incapacitated without examining him first).

To overcome these admitted shortcomings, Plaintiff now three years after the fact, submits affidavits from her medical providers, Dr. Cammilleri and Ms. May. Neither, however, support the conclusion that either of Plaintiff's daughter's medical conditions met the definition of "serious health condition" within the meaning of the FMLA.

Both Dr. Cammilleri and Ms. May conclude that Plaintiff's daughter may not have had the chicken pox at all. Instead, they state that the daughter was diagnosed for a "rash, suspicious of the chicken pox." [Dr. Cammilleri Aff. ¶7, May Aff. ¶7) ] And while they speculate that the daughter's illness of "possible chicken pox" would be a serious medical condition, other statements in their affidavits do not demonstrate that the daughter's condition fell within the meaning of the FMLA. Specifically, nowhere in their Affidavits do they state that the daughter was incapacitated for more than three days, received treatment two or more times by any health care provider, or that they had prescribed a regimen of continuing treatment, e.g. prescription drugs, as required under the meaning of the FMLA. In connection with the daughter's conjunctivitis, also noticeably absent from the Affidavits is any statement that Plaintiff's daughter was incapacitated for more than three days.[2]

---

2 Ms. May states that she told Plaintiff "to see how the rash progresses... [and] gave her pictures and descriptions of pox lesions." Apparently, the rash never materialized to pox lesions, as two days after the doctor's visit, Plaintiff's daughter was back in school.

Finally, to the extent the two Affidavits from the medical providers may be interpreted to support the conclusion that either illness qualified within the meaning of the FMLA, such Affidavits would be inconsistent with the information stated in the certifications provided to Lucent in 2003, which Lucent relied upon at the time it decided to deny Plaintiff the FMLA leaves. Certainly, Lucent cannot be held accountable for any statements made now more than three years after Lucent decided to deny Plaintiff's FMLA leave requests. Lucent's decisions in 2003 were based on the information and certifications provided to it at that time and, as described above, none of it supported the conclusion that Plaintiff's daughter's medical conditions qualified under the FMLA.

**B. Plaintiff fails to Qualify for SNLA Leave**

As stated in our moving papers, an employee claiming a violation of the SNLA may only bring a private cause of action "...after the filing of a complaint with the attorney general..." Mass Gen. Laws ch. 149, § 150[3]. (emphasis added). Plaintiff's argument that "may" does not mean that she "must" first file with the attorney general is unsupported by any authority. It is clear from the plain meaning of statute itself that "may" refers to Plaintiff's option of bringing a private cause of action, not that she has an option not to first file with the attorney general before doing so. Plaintiff's failure to file her complaint with the attorney general – an administrative prerequisite – is fatal to her SNLA claim, which is now time barred by the three-year statute of limitation period. Id.

Plaintiff's SNLA claim is also precluded because Plaintiff had already utilized all of her personal days in 2003 which, as provided for under the SNLA, are counted against

---

[3] This Section is made applicable to the SNLA through Mass Gen. Laws ch. 149, § 52D(f) ("Violation of this section shall be subject to the second paragraph of section 150 and to section 180.").

otherwise available time off under the SNLA.[4] See also Mass Gen. Laws ch. 149, § 52D(c) ("an eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for any of the leave" during any twelve month period).

Finally, Plaintiff has failed to demonstrate that Plaintiff's daughter's medical visits fell within the unequivocal meaning and purpose of the SNLA. These visits, according to Plaintiff, were not for the statutorily specified purpose of a routine "check-up," but were rather for treatment of the alleged chicken pox and conjunctivitis. Nor does Plaintiff dispute the fact that the time allegedly taken off for the doctor visits accounted for only a fraction of the total of the three days of time taken off by Plaintiff to stay home and care for her daughter in May and July 2003. [Gould T. 54-55, 66] Because time off for childcare (as contrasted with time off for medical check ups) is not one of the stated purposes for SNLA leave, it is not protected under this statute. Mass. Gen. Laws ch. 149, § 52D(b).

Based on the foregoing, Plaintiff cannot demonstrate that any of her time off in May and July 2003 was covered under the SNLA.

## POINT II

## PLAINTIFF CANNOT ESTABLISH A CLAIM OF RETALIATION

Because Plaintiff has not established that either her May or July 2003 leaves qualified under the FMLA or SNLA statutes, as a matter of law Plaintiff cannot establish that she engaged in any protected activity – the first prong of a prima facie retaliation case. Schmittou v. Wal-Mart Stores, Inc., No. Civ. 011763, 2003 WL 22075763 (D. Minn. Aug. 22, 2003); Collins

[4] While Plaintiff claims she had one remaining personal day, the only remaining personal day Plaintiff had left was Columbus Day, which, under the Union contract, could not be substituted for any other day.

v. Merck-Medco RX Servs., of Texas, L.L.C., No. 300CV1852-X, 2001 WL 1142794 (N.D. Tex. Sept. 24, 2001); see also Nagy v. Tee Vee Toons, Inc., No. 03 Civ. 7838, 2004 WL 1059512 (S.D.N.Y. May 12, 2004); Evans v. Henderson, No. 99 C 8332, 2001 WL 109771 (N.D. Ill. Feb. 5, 2001) (denying plaintiff's retaliation claim because employee could not establish protected activity status for the care of his sick children, who had the chicken pox).

While Plaintiff asserts that her May 2003 FMLA leave request was denied in retaliation for her requesting and taking leave on July 7, 2003, the only reason why her May leave request was not denied sooner was because Lucent had given Plaintiff multiple extensions of time to provide appropriate documentation and cure deficiencies in FMLA paper work that she submitted earlier. Because the supplementary documentation still failed to demonstrate that Plaintiff's daughter suffered from a serious medical condition, her request for FMLA was denied on that basis and that basis alone.

While Plaintiff also asserts that she was terminated soon after requesting FMLA leave, it has long been held that proximity of an employee's medical leave to the termination is not sufficient to defeat summary judgment. Chaffin v. Carter Co., No. Civ. A. 96-2127, 1998 WL 19624, at *5 (E.D.La. Jan. 20, 1998.) ("If timing alone were sufficient, any employer who granted an employee leave under the FMLA would thereafter have its hand tied regarding any discipline of that employee. The FMLA is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave.") (citation omitted), aff'd, 179 F.3d 316 (5th Cir. 1999).

As demonstrated in its moving papers, Plaintiff's non-compliance with Lucent's attendance policies provided Lucent with a legitimate, nondiscriminatory reason for Plaintiff's employment termination. Plaintiff has not presented any evidence that Lucent's asserted reason

for the employment termination was not the true reason for her discharge or that Lucent harbored a secret motive to deny Plaintiff's her FMLA rights. To the contrary, Lucent had previously granted Plaintiff hundreds of days of FMLA leave and never once counted, or even considered, such days when disciplining Plaintiff for excessive absences under Lucent's Absence Control Program. Indeed, the record evidence demonstrates that Lucent supervisors repeatedly tried to assist and instruct Plaintiff in obtaining proper FMLA documentation in May and July 2003.

**POINT III**

**PLAINTIFF'S CLAIMS OF WRONGFUL TERMINATION AGAINST PUBLIC POLICY ARE BARRED BY THE FMLA AND SNLA**

In opposing Defendant's motion to dismiss her claims, Plaintiff argues that Defendant incorrectly relies on Melley v. Gillette Corp., 19 Mass. App. Ct. 511, 475 N.E.2d 1227 (1985), aff'd, 397 Mass. 1101, 491 N.E.2d 252 (1986). Melley holds that if a statute already exists to protect a public policy, a plaintiff may not recover for a common law claim that he or she was wrongfully terminated in violation of that public policy.

Without any authority, Plaintiff argues Melley is inapplicable here because Defendant claims she was ineligible for either FMLA or SNLA in May and July 2003. Assuming that to be so, Plaintiff appears to argue that without her public policy claim, she would be without any remedy. The standard for her public policy claim, however, does not rise or fall on whether Plaintiff can establish her other statutory claims (i.e., FMLA or SNLA). Rather, her claim hinders on whether both statutes exist to protect the very same public policy Plaintiff claims Defendant violated, i.e., to stay home and care for her sick child. Because both statutes provide broad protection for that very same purpose, Plaintiff may not recover for a common law claim that she was wrongfully terminated in violation of that public policy.

## POINT IV

## PLAINTIFF'S CLAIMS FOR INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ARE BARRED BY THE EXCLUSIVITY PROVISIONS OF THE WORKERS' COMPENSATION ACT

While Plaintiff concedes that the WCA bars her common law claims of intentional infliction of emotional distress arising out of, and in the course of her employment at Lucent, she argues the same may not necessarily be so in connection with her negligent infliction of emotional distress claims. Plaintiff, however, fails to provide any authority, much less explanation in support of this assertion.

To the contrary, in its moving papers, Lucent demonstrates that intentional as well as negligent infliction of emotional distress claims arising out of, and in the course of an employee's employment, are barred by the exclusivity provisions of the WCA. Lennon v. Walsh, 798 F. Supp. 845, 848 (D. Mass. 1992) (exclusivity provision of the WCA precluded union official from recovering against union benefit plans for intentional infliction of emotional distress; official's allegation that he was removed from employment for improper reason did not take claim outside of scope of the WCA. Claims for "'emotional distress resulting from employment termination, *wrongful or otherwise*, are precluded by [the] exclusivity provision' [of the WCA].") (emphasis in original and citation omitted); Parisi v. Trustees of Hampshire Coll., 711 F. Supp. 57, 63 (D. Mass. 1989); Doe v. Purity Supreme, Inc., 422, Mass. 563, 4664 N.E.2d 815 (1996) (exclusivity provision of the WCA precludes action against employer for negligent and intentional infliction of emotional distress arising out of, and in the course of, employment); Green v. Wyman-Gordon Co., 422 Mass. 551, 664 N.E.2d 808 (1996) (former employee's claims against former employer for intentional and negligent infliction of emotional distress

arising out of alleged sexual harassment by co-employee barred by the exclusivity provision of the WCA).

## CONCLUSION

Based on the foregoing, it is clear this litigation is without merit and, as a matter of law, should be dismissed in its entirety.

Dated: New York, New York
October 12, 2006

Respectfully submitted,

/Robyn Ruderman
Evan J. Spelfogel (474440)
Robyn Ruderman (admitted *pro hac vice*)
EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York 10177-1211
(212) 351-4500
Attorneys for Defendant