Linda A. Harvey
Robert R. Thomas
Harvey, Kleger & Thomas
184 Pleasant Valley St. – Suite 1-204
Methuen, MA 01844
(978) 686-9800
Attorneys for Plaintiff
Luann Gould

Evan J. Spelfogel
Jamila A. Berridge
Epstein Becker & Green
250 Park Avenue
New York, NY 10021
(212) 351-4500
Attorneys for Defendant
Lucent Technologies, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LUANN P. GOULD,

                      Plaintiff,

         – against –

LUCENT TECHNOLOGIES, INC.,

                   Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

05 CV 11118 (PBS)

**JOINT PRETRIAL
MEMORANDUM**

         Plaintiff Luann P. Gould ("Gould" or "Plaintiff"), by her attorneys Harvey,

Kleger & Thomas, and Defendant Lucent Technologies, Inc. ("Lucent" or "Defendant"), by its

attorneys, Epstein Becker & Green, hereby provide the parties' Joint Pretrial Memorandum

pursuant to Local Rule 16.5(D) of the United States District Court for the District of

Massachusetts.

         The Plaintiff reserves the right to supplement its responses prior to trial.

         The Defendant reserves the right to supplement its responses prior to trial.  The

Defendant further reserves the right to offer witnesses and evidence in the nature of rebuttal.

I.      **A Concise Summary of the Evidence That Will Be Offered By**

A.      **Plaintiff, with respect to both liability and damages:**

1.      Ms. Gould will testify with respect to her daughter's symptoms and diagnosis of conjunctivitis, incapacity, medical treatment, care she provided, and prescription medication she administered for conjunctivitis symptoms from July 4, 2003 to July 11, 2003. Dr. Thomas Camillieri or Nurse Nicole May will testify to their observation, diagnosis and treatment of Shelby Gould's serious medical condition on or about July 7, 2003 and her coverage under FMLA. Gould will testify to conversations and meetings she had with her managers at work relating to her request for FMLA leave for her July 7, 2003 absence, and the Defendant's denial of her request which resulted in her suspension and termination on August 1, 2003. Gould will testify to conversations she had with her medical provider, and her managers at Lucent regarding her requests for FMLA leave, including the denied leave request to care for her daughter's condition of chicken pox in early May, 2003. Gould will testify how she was not given an opportunity to re-submit FMLA forms or requests for the July 7, 2003 date prior to being terminated on August 1, 2003. Gould will testify to facts and circumstances which infer bad faith or indicate the likelihood of bad faith on the part of the Defendant by denying her final FMLA request without recourse, prior to termination.

2.      Deletis and Ahern are expected to testify with respect to Gould's performance and attendance at work, and requests for FMLA leave. Campbell is expected to testify about the workings of the Absence Control Plan, and the decision to terminate Gould. Blumer is expected to testify about her conversations and emails exchanged with Gould and any Lucent managers concerning Gould's requests for FMLA leave in 2003, Gould's eligibility for FMLA time, reasons for denying Gould's request of July 7, 2003, the timing of Blumer denying

Gould's May 5-6, 2003 FMLA request, and Blumer's documented opinion concerning her predisposition to deny Gould's requests for leave under FMLA in 2003, even those that had been approved by Lucent under a prior benefits manager.

With respect to damages, Gould will present the following evidence:

3.      To date, Ms. Gould has lost an estimated $30,000/year for 3.5 years, or $105,000 in back pay; loss of accrued retirement and pension benefits from August 1, 2003 to the present time, estimated at $35,000; increased out-of-pocket health insurance coverage costs of $5,000/year or $17,500; costs of filing suit and out-of-pocket deposition costs, $1,000; for a sub-total of $158,500, less mitigated damages, below, of $44,500.   Single damages come to $114,000.

4.      With respect to mitigation of damages, since August 1, 2003, Ms. Gould has received an estimated $7,000 in unemployment benefits in 2003-2004, and she has earned limited pay working as a clerk in a liquor store, followed by part-time cashier work at Home Depot at $9.50 per hour (estimated at $15,000 per year).  Salary/earnings mitigation, starting in 2004 (for a partial year), is estimated at salary times 2.5 years, resulting in $37,500 plus $7,000 unemployment benefits, for a total of $44,500.

5.      Liquidated damages, if found, based on Lucent's bad faith, could double the damages above, to $228,000.

6.      Attorney's fees, since filing the complaint, including defending against the Summary Judgment motion, trial preparation, and allowance for trial, are estimated at $160,000. Total damages are therefore estimated at $274,000; or $388,000, including liquidated damages.

B.    **Defendant, with respect to both liability and damages:**

Through the trial testimony of witnesses Katherine Campbell (Workforce Relations Supervisor and Chairperson of Lucent's Absence Control Board), Margaret Blumer, (Authorized Benefit Delegate), Brian Ahern (Supervisor, Extreme Department), Steven Sickel (Manager), Pyong Deletis (Supervisor), Janice Danese (Manager), Leon Pratt (Senior Manager) and Mark Savelloni (Senior Manager), Lucent will demonstrate that:

1.    Lucent maintains a comprehensive five-level absenteeism policy, the Absence Control Plan (the "ACP").

2.    Shortly after the commencement of her employment, and continuing throughout her entire employment at Lucent, Gould experienced continual and repeated absenteeism problems. From 1996 through 2003, Gould had a total of 503.5 days of non-exempt, actionable absences. Lucent repeatedly counseled and warned Gould about her on-going absenteeism problem and placed her on final warning.

3.    From 1996 through 2003, Gould requested and was granted at least seven leaves of absence under the FMLA, for an additional 285.5 days off from work. These exempt, non-actionable absences did not have any adverse impact upon Gould's employment with Lucent.

4.    On July 7, 2003, Gould was absent from work to care for her daughter, who was allegedly home from school with symptoms of conjunctivitis.

5.    On July 25, 2003, Plaintiff attempted to qualify her July 7, 2003 absence as FMLA leave by providing documentation to Lucent consisting of an FMLA Healthcare Provider's Report. As of this date, Gould was already on Level IV of the ACP and had been placed on final warning.

6.      Plaintiff's submitted documentation, which Lucent relied upon in making its determination, demonstrated that her daughter's alleged case of conjunctivitis did not qualify as a serious health condition, as defined under the FMLA, since the daughter's alleged incapacity did not last for more than three consecutive days.  More specifically, in response to Section 5a of the FMLA Healthcare Provider's Report, which required the medical provider to state the approximate date the condition commenced, the probable duration of the condition, and the probable duration of the patient's present incapacity,[1] if different, Plaintiff's medical provider stated that, "Patient needed to be kept home for 24 hours so Luanne Gould needed to miss work on 7/7/03 only."  Based on her doctor's certification, which was complete and clear on its face, Lucent properly determined that Plaintiff was not entitled to FMLA leave.

7.      Gould's absence from work on July 7, 2003 placed her on Level V of the ACP, which resulted in her termination on August 1, 2003 for unsatisfactory attendance.  Thus, Gould's termination was based on legitimate, non-discriminatory reasons completely unrelated to any request for FMLA leave.

8.      Many Lucent employees, including Gould, have requested and received FMLA leave without adverse impact upon their employment.

With respect to damages, Lucent intends to offer the following evidence:

9.      Gould's attendance records from 1996 to 2003 establish that she never worked a full year and her attendance at work was only approximately seventy one percent (71%) during this time period.  Therefore, if Gould is found to have any damages, her estimate

---

[1]      The FMLA Healthcare Provider's Report defines "incapacity" to mean "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom."

for lost wages is speculative and inflated because her estimate assumes that she would have had perfect attendance at work for the time period following her termination of employment. Plaintiff's estimate is not supported by her attendance history and therefore her damages, if any, should be reduced to account for her sporadic attendance.

10.    Gould's tax returns and statistical evidence concerning the local job market, among other things, demonstrate that her mitigation efforts were unreasonable and inadequate. Therefore, if Gould is found to have any damages, such damages should be offset by the amount she could have earned with reasonable diligence after her employment termination at Lucent. Moreover, Gould should not be entitled to any front or back pay.

## II.    The Facts Established By Pleadings or By Stipulations or Admissions of Counsel

### A.    Plaintiff's Statement:

Plaintiff declines to accept Defendant's proposed stipulations of fact attached in Section II(B).

1.    Lucent's Absence Control Plan (Level 1 to Level 5) governed the amount of excused and unexcused time available to the Plaintiff in 2003. (Gould T. p. 48-49, 51-52).

2.    In June, 2003, Plaintiff was on Level III of the Absence Control Plan. (Gould T. p. 52).

3.    Plaintiff requested July 7, 2003 as an excused, emergency day under FMLA so she could care for her daughter who was suffering from symptoms of conjunctivitis. (Gould T. p. 64).

4.    Plaintiff called in on July 7, 2003 and spoke to her supervisor, Pyong Deletis, about her requested absence. (Deletis T. p. 71).

5.       Deletis called Margaret Blumer that day to discuss Gould's eligibility for additional FMLA time.  (Deletis T. p. 71, 72).

6.       When making the decision to take July 7, 2003 off under FMLA, Plaintiff was on Level III.  (Gould T. p. 52, 70).

7.       Plaintiff returned to work on July 8, 2003.  (Gould T. p. 72).

8.       On or about July 16, 2003, Plaintiff met with her managers to discuss her Level IV warning because an absence on May 5-6, 2003 for her daughter's chicken pox, believed by Plaintiff to be covered by FMLA, was denied by Blumer after she spoke to Deletis on July 7, 2003.  (Gould T. p. 68).

9.       Plaintiff filled out FMLA forms for the July 7, 2003 absence as she had in the past for the employer and for her doctor.  (Gould T. p. 71, 76-77).

10.      The Defendant, through its Human Resources Manager Blumer, did not accept Gould's FMLA forms as providing adequate certification to qualify Gould for FMLA leave for May 5-6, 2003.  (Gould T. p. 70).

11.      Blumer notified Gould in writing on July 14, 2003 that "Childhood illness does not qualify under the FMLA, unless there are complications".  (Lucent document 00038-39)

12.      Blumer failed to give Gould an opportunity prior to termination to present new certification forms or additional evidence of FMLA eligibility for July 7, 2003.  (Court Findings and Order).

13.      On or about August 1, 2003, the Defendant placed Plaintiff on Level V, which was grounds for immediate termination according to the Absence Control Plan. (Gould T. p. 80).

14.    On August 1, 2003, the Defendant terminated the Plaintiff under its Absence Control Plan. (Gould T. p. 80).

15.    The Defendant relied on Blumer's interpretation of FMLA rules and regulations to terminate Gould. (Deletis T. p. 79-80).

16.    Blumer sent an email on or about July 14, 2003 to Cynthia Williams, warning her of an "FMLA possible problem", with respect to the Plaintiff, Luann Gould. In this email, Blumer stated her opinion that two of Gould's previously-approved requests for FMLA leave for childhood illness should not have been approved.  (Gould T. p. 87, Lucent Doc 00022)

### B.    Defendant's Statement:

Defendant declines to stipulate to the items set forth above in Section II(A). However, Defendant will agree to stipulate to the following:

1.    Lucent maintains a comprehensive five-level absenteeism policy, the ACP.  [Campbell Aff. ¶ 3, Exhibit A][1]

2.    If an employee reached Level V, the employee's immediate supervisor prepares and issues a Level V Termination Review form, which is submitted to the Absence Control Board (the "Board") for review and determination of whether the employee should be placed on probation or be terminated from employment.  [Campbell Aff. ¶ 6, Exhibit A]

3.    In determining what Level V action should be administered, the Board considers the following factors:  the employee's attendance record for the current year and

---

[1]    The Affidavits of Katherine Campbell, Margaret Blumer and Brian Ahern, sworn to on August 18, 2006 are referred to as "Campbell Aff., "Blumer Aff.," and "Ahern Aff.," respectively.  The relevant excerpts of the Deposition Transcripts of Pyong Deletis and Plaintiff are referred to as "Deletis T." and "Gould T.", respectively.

previous absence history; reasons for the absences; character of service; and consistency in the administration of the ACP. [Campbell Aff. ¶ 6, Exhibit A]

4.    Since 1997, with the exception of one employee, every employee who reached Level 5 under the ACP was terminated from Lucent's employment, and not placed on probation. [Campbell Aff. ¶ 6]

5.    At all relevant times during her employment, Gould was a member of, and represented by, the Communications Workers of America, AFL-CIO, Local 1363 ("the Union").[2] [Campbell Aff. ¶ 8]

6.    From 1996 through 2003, Gould had a total of 503.5 days of non-exempt, chargeable absences.

7.    During this same period of time, Plaintiff requested and was granted at least seven leaves of absence under the FMLA, for an additional 285.5 days of exempt, non-chargeable absences from work. [Campbell Aff. ¶ 10; Gould T. 47-48]

8.    Not one of Plaintiff's FMLA absences counted toward or triggered any action against Plaintiff under the ACP. [Campbell Aff. ¶ 10; Gould T. 47]

9.    At the end of each year, Gould received an "End of Year Status Review," where she was counseled about her attendance record and the level of action against her. [Campbell Aff. ¶ 11; Gould T. 98]

10.    Plaintiff entered 2003 on Level III. [Gould T. 52]

11.    Under the ACP, after Plaintiff accumulated four days of non-exempt, chargeable absences in 2003, the next non-exempt, chargeable absence that year would progress

---

[2]    The terms and conditions of Plaintiff's employment were governed by, among other things, a collective bargaining agreement ("CBA") between the Union and Lucent.

Plaintiff to Level IV. [Campbell Aff. ¶ 12] Further, the next non-exempt, chargeable absence after that in 2003 would result in Level V action. Id.

12. On January 6-8, 2003, Plaintiff was absent from work for three days. [Gould T. 52-53] These absences did not fall under any of the exclusions contained in the ACP and were counted toward Plaintiff's four day allotment. [Gould T. 52-53]

13. From March 3-28, 2003, Plaintiff was out for approximately three and one-half weeks. [Campbell Aff. ¶ 14] This leave of absence was requested and granted under the FMLA. None of this time was counted against Plaintiff. [Gould T. 53]

14. On May 5-6, 2003, Plaintiff missed an additional two days of work. [Gould T. 54, 65]

15. On May 7, 2003, Plaintiff's supervisor, Brian Ahern ("Ahern"), informed Gould that she would progress to Level IV if her May 5-6, 2003 leave failed to qualify under the FMLA, as this two day absence (if non-exempt) placed Plaintiff over her four day allotment. [Ahern Aff. ¶ 4]

16. Based on the FMLA documentation submitted to Lucent by Gould in May 2003 and July 2003, Lucent disqualified Plaintiff's May 5-6, 2003 leave under the FMLA for failure to meet the criteria of a "serious health condition." [Blumer Aff. ¶ 6, Exhibit C; Campbell Aff. ¶ 15, Exhibit B]

17. On July 16, 2003 Gould progressed to Level IV under the ACP, for which she received a final warning. [Blumer Aff. ¶ 6, Exhibit C; Campbell Aff. ¶ 15, Exhibit B]

18. On July 7, 2003, Plaintiff missed an additional day of work to care for her daughter, who was home from school that day with symptoms of conjunctivitis. [Gould T. 65, 72]

19.    On July 7, 2003, Plaintiff called her supervisor, Pyong Deletis, about her requested absence. Ms. Deletis suggested that Plaintiff have her daughter's doctor fill out an FMLA Healthcare Provider Report. [Gould T. 71]

20.    Plaintiff returned to work on July 8, 2003.

21.    On July 25, 2003, Plaintiff attempted to qualify her one day leave of July 7, 2003 under the FMLA by providing to Lucent an FMLA Healthcare Provider's Report signed by Physician Assistant Nicole May. [Blumer Aff. ¶ 8, Exhibit F]

22.    Section 5a of the FMLA Healthcare Provider's Report required the medical provider to state the approximate date the condition commenced, the probable duration of the condition, and the probable duration of the patient's present incapacity,[3] if different. In response, Plaintiff's medical provider stated, "Patient needed to be kept home for 24 hours so Luanne Gould needed to miss work on 7/7/03 only." [Blumer Aff. ¶ 8, Exhibit F]

23.    The FMLA Healthcare Provider's Report further stated that the daughter's condition on July 7, 2003 was neither chronic nor required additional treatments. [Blumer Aff. ¶ 8, Exhibit F]

24.    In July 2003, Plaintiff did not submit any other medical evidence regarding her daughter's alleged conjunctivitis.

25.    Plaintiff's daughter was examined by a health care provider for her alleged conjunctivitis on July 7, 2003 only.

26.    By letter dated July 28, 2003, Lucent informed Plaintiff that her July 7 leave did not qualify under the FMLA. [Blumer Aff. ¶ 8, Exhibit G]

---

[3]    The FMLA Healthcare Provider's Report defines "incapacity" to mean "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom."

27.   On July 30, 2003, Plaintiff was placed on Level V.  [Campbell Aff. ¶ 16, Exhibit C]

28.   On July 31, 2003, Plaintiff's Level V action was submitted to the Board for a determination of whether her employment should be terminated.  [Campbell Aff. ¶ 17]

29.   Considering Plaintiff's prior attendance record (exclusive of her FMLA leaves), and all her previous warnings and counseling, the Board decided to terminate Plaintiff's employment.  [Campbell Aff. ¶ 17, Exhibit D]

30.   Effective August 1, 2003, Plaintiff's employment was terminated for unsatisfactory attendance.  [Campbell Aff. ¶ 17, Exhibit D]

31.   At all times through the disciplinary process, Plaintiff was continuously represented by her Union and had access to comprehensive grievance procedures (up to and including, final and binding arbitration) under the Collective Bargaining Agreement ("CBA") with the Union should she disagree with any of the disciplinary actions taken against her. [Campbell Aff. ¶ 20, Exhibit F]

32.   Despite the repeated counseling and warnings Plaintiff received as she progressed though the five levels of the ACP, and having her Union Steward, and/or the option of having the Union Steward, present during such actions, Plaintiff never filed a grievance over any action until her employment was terminated.  Even then, Plaintiff never fully exhausted the grievance procedures under the CBA.  [Campbell Aff. ¶ 20]

33.   With her Union's guidance, in or around January 2004, Plaintiff filed a claim with the United States Department of Labor ("DOL"), claiming a violation of the FMLA based on allegations encompassed within this litigation.  [Blumer Aff. ¶ 10]

34.     On March 16, 2004, after a thorough investigation, including interviewing witnesses and reviewing the records concerning Plaintiff's attendance, the DOL dismissed her FMLA claims, finding no violation of the law.  [Blumer Aff. ¶ 10]

35.     Plaintiff was unemployed from August 1, 2003 until in or about February 2005.  Plaintiff cannot identify the names of any employers with which she sought employment nor could she state the number of employers with which she sought employment during this period.  Moreover, Plaintiff has no record of where she applied for employment.  [Gould T. 33-34]

## III.     Contested Issues of Fact

### A.     Plaintiff's Statement:

1.     Whether Shelby Gould's conjunctivitis was a "serious medical condition" under the FMLA.

2.     Whether Shelby Gould was incapacitated by the conjunctivitis, as defined by the FMLA regulations.

3.     Whether Luann Gould was incapacitated by the conjunctivitis, as defined by the FMLA regulations.

4.     Whether Gould's July 7, 2003 absence from work should have been qualified under the FMLA statute and regulations.

5.     Whether Pyong Deletis helped or harmed the Plaintiff in her attempt to take July 7, 2003 as FMLA-qualified leave.

6.     Whether Deletis, Blumer, or other Lucent managers attempted to restrict Gould's lawful rights to request FMLA time.

7.    Whether Margaret Blumer or other Lucent managers acted in a retaliatory manner because of their belief that Ms. Gould had requested and taken too much FMLA leave prior to July 7, 2003.

8.    Whether Margaret Blumer or other Lucent managers attempted to restrict Ms. Gould's lawful right to request or take future FMLA leave in 2003, specifically, the request on July 7, 2003 that was denied, and resulted in Gould's termination.

9.    Whether Margaret Blumer correctly or incorrectly interpreted the FMLA rules and regulations with respect to Shelby's conjunctivitis and Luann Gould's request for July 7, 2003 by writing to Gould that "Childhood illness does not qualify under the FMLA, unless there are complications."

10.    Whether all Lucent employees on Level V were terminated immediately, without any right to reinstatement, as Gould was told at her termination; or whether the Absence Control Plan had discretionary powers not to terminate Level V employees.

**B.    Defendant's Statement:**

Defendant disagrees with Plaintiff's alleged contested issues of fact as set forth above in Section III(A) on the grounds that they are inconsistent with this Court's Memorandum and Order dated October 30, 2006 and will unnecessarily complicate the trial.    Accordingly, Defendant respectfully proposes the adoption of the following contested issues of fact:

1.    Whether Lucent was entitled to deny Plaintiff's request for FMLA leave in connection with her absence on July 7, 2003.

2.      Whether Lucent was entitled to rely on the Health Care Provider's Report submitted by Plaintiff in July 2003 in denying Plaintiff's request for FMLA leave in connection with her absence on July 7, 2003.

3.      Whether the Health Care Provider's Report submitted by Plaintiff in July 2003 clearly indicated on its face that her daughter's conjunctivitis failed to qualify as a serious health condition.

4.      Whether Plaintiff's daughter was incapacitated due to conjunctivitis for more than three consecutive days during which she was unable to attend school or perform other regular daily activities.

5.      Whether Plaintiff's termination from employment for unsatisfactory attendance was in accordance with the procedures contained in Lucent's Absence Control Plan.


## IV.    Any Jurisdictional Questions

None.


## V.    Any Questions Raised By Pending Motions

### A.    Plaintiff's Statement:

Plaintiff's contemporaneously filed Motion(s) in Limine with respect to proposed summaries of evidence and/or hearsay evidence to be submitted by Defendant.

### B.    Defendant's Statement:

Defendant's contemporaneously filed Motion in Limine contains several questions for the Court's consideration.

## VI.    Issues of Law, Including Evidentiary Questions, Together With Supporting Authority

### A.    Plaintiff's Statement:

None at this time.

### B.    Defendant's Statement:

1.    Whether Lucent was entitled to rely on the provided medical certification, without any further inquiry or investigation, where the certification is complete and clearly indicates on its face that the employee does not qualify for FMLA leave. Stoops v. One Call Commc'ns, Inc., 141 F.3d 309, 314 (7th Cir. 1998); Densmore v. Pilgrim's Pride Corp., No. 4:05CV00770-WRW, 2006 WL 3258259 (E.D. Ark. Nov. 9, 2006); Collins v. Merck-Medco RX Servs. of Texas, L.L.C., No. 300CV1852-X, 2001 WL 1142794 (N.D. Tex. Sept. 24, 2001).

2.    Whether Plaintiff is prohibited from offering any testimony as to her own assessment of her daughter's health in or about July 2003. See, e.g., Bell v. Store, 83 F. Supp. 2d 951, 959 (N.D. Ill. 2000) ("[Plaintiff's] own statement is not enough to establish he was incapacitated: [he] must provide evidence from a medical professional or health care provider that he was unable to work."); Austin v. Haaker, 76 F. Supp. 2d 1213, 1221 (D. Kan. 1999) ("an employee must present specific evidence that he or she suffers from a serious health condition, and cannot rely on his own assessment of his health"); Bond v. Abbott Lab., 7 F. Supp. 2d 967, 976 (N.D. Ohio 1998) (dismissing Plaintiff Bond's FMLA claim because he could not show a period of incapacity exceeding three calendar days; there was nothing in the record to support Plaintiff's claim that he was unable to perform his regular daily activities other than his own self-serving testimony); Joslin v. Rockwell Int'l Corp., 8 F. Supp. 2d 1158, 1160-61 (N.D. Iowa 1998) (finding that an employee's own testimony that she was unable to work because of her illness was insufficient to prove that she was incapacitated).

3.     Whether Dr. Thomas J. Cammilleri and/or Nicole May, Physician Assistant, are prohibited from offering any testimony as to Plaintiff's daughter's health prior to their examination of and/or commencement of their treatment of Plaintiff's daughter on July 7, 2003. See, e.g., Bell v. Store, 83 F. Supp. 2d 951, 959 (N.D. Ill. 2000) ("[Plaintiff's Doctor] could not determine if [Plaintiff] was incapacitated from March 2, 1998 through March 17, 1998 because he did not examine [Plaintiff] until March 24, 1998.").

4.     If Lucent correctly determined that Shelby Gould's conjunctivitis did not qualify as a serious health condition under the FMLA, whether Plaintiff's claim for retaliation is barred for failure to establish any protected activity. Schmittou v. Wal-Mart Stores, Inc., No. Civ. 011763, 2003 WL 22075763 (D. Minn. Aug. 22, 2003); Collins v. Merck-Medco RX Servs., of Texas, L.L.C., No. 300CV1852-X, 2001 WL 1142794 (N.D. Tex. Sept. 24, 2001); see also Nagy v. Tee Vee Toons, Inc., No. 03 Civ. 7838, 2004 WL 1059512 (S.D.N.Y. May 12, 2004); Evans v. Henderson, No. 99 C 8332, 2001 WL 109771 (N.D. Ill. Feb. 5, 2001).

5.     If Plaintiff prevails on her claims, whether the FMLA prohibits her from recovering for certain alleged damages, including but not limited to emotional and consequential damages. See 29 U.S.C. 2617(a)(1); Beebe v. Williams College, 430 F. Supp. 2d 18 (D. Mass. 2006); Lufkin v. E. Me. Med. Ctr., 401 F. Supp. 2d 145 (D. Me. 2005) (collecting cases).

6.     If Plaintiff prevails on her claims, whether her back wages, if any, should be offset by the amount she could have earned with reasonable diligence after her termination. Johnson v. Spencer Press of Me., Inc., 364 F.3d 368, 379 (1st Cir. 2004) ("awards of back pay are offset by any wages that could have been earned with reasonable diligence after the illegal discharge, regardless of whether they were actually earned").

7.    If Plaintiff prevails on her claims, whether Lucent's good faith and reasonable grounds for believing it acted lawfully prohibit Plaintiff from recovering liquidated damages under the FMLA. See 29 U.S.C. § 2617(a)(1)(A)(iii); see also Hall v. Meadwestvaco Corp., 10 Wage & Hour Cas. 2d (BNA) 996 (D. Mass. 2005) (denying liquidated damages where Defendant's actions in terminating Plaintiff, given the entire record, were entirely divorced from any consideration of Plaintiff's prior FMLA leave); Miller v. AT&T, 83 F. Supp. 2d 700, 709 (S.D. W.Va. 2000), aff'd, 250 F.3d 820 (4th Cir. 2001) (employer acted in good faith and had reasonable grounds for believing that the FMLA did not apply to employee's absences where its erroneous conclusion was based primarily on manager's interpretation of the FMLA regulations).

8.    If Plaintiff prevails on her claims, whether the fees of her attorneys should be reduced for their time spent litigating (and preparing to litigate) any claims dismissed by this Court in its Memorandum and Order dated October 30, 2006, including: (a) Plaintiff's common law claims for wrongful discharge, intentional and negligent infliction of emotional distress; (b) Plaintiff's claims for interference and retaliation under the Massachusetts Small Necessities Leave Act; and (c) Plaintiff's claims for interference and retaliation under the Family and Medical Leave Act in connection with Lucent's denial of Plaintiff's FMLA leave request for her absence from May 5 to May 6 of 2003. See, e.g., Coutin v. Young & Rubicam P.R., 124 F.3d 331, 339 (1st Cir. 1997) ("Attorneys' fees normally should not be awarded for time spent in litigating (or preparing to litigate) unsuccessful, severable claims.").

## VII.    Any Requested Amendments To The Pleadings

None.

**VIII.    Any Additional Matters to Aid in the Disposition of the Action**

      None.

**IX.    The Probable Length of the Trial**

    **A.    Plaintiff's Statement:**

      10 half days (mornings, from 9:00 a.m. to 1:00 p.m.).

    **B.    Defendant's Statement:**

      Three to four full days.

**X.    The Names, Addresses and Telephone Numbers of Witnesses To Be Called (Expert and Others) and Whether the Testimony of Any Such Witness is Intended To Be Presented by Deposition:**

    **A.    Plaintiff's Witnesses (The Following Are Live Witnesses, Not Presented By Deposition)**

      1.    Luann Gould, Plaintiff

          14 Billy's Way, Danville, NH 03819

          c/o Harvey, Kleger & Thomas, 978-686-9800.

      2.    Pyong W. Deletis, Supervisor
          c/o Lucent Technologies, N. Andover, Massachusetts

      3.    Katherine A. Campbell, Workforce Relations Supervisor
          c/o Lucent Technologies, N. Andover, Massachusetts

      4.    Margaret L. ("Peggy") Blumer, former Disability Nurse Manager
          c/o Lucent Technologies, Murray Hill, New Jersey

      5.    Brian Ahern, Supervisor

          c/o Lucent Technologies, Inc., N. Andover, Massachusetts

      6.    Dr. Thomas J. Cammilleri, Greater Hampstead Family Medicine, PC, 207 Stage Road, Hampstead, NH 03841.  Tel. 603-329-5222.

7.     Nicole May, Physician Assistant, Greater Hampstead Family Medicine, PC, 207 Stage Road, Hampstead, NH 03841.  Tel. 603-329-5222.


**B.     Defendant's Witnesses**

Lucent reserves the right to supplement this list prior to trial:

1.     Pyong W. Deletis, Supervisor (live testimony)

        Lucent Technologies, Inc.
        1600 Osgood Street
        North Andover, MA 08145
        c/o Evan Spelfogel, (212) 351-4539

2.     Katherine A. Campbell, Workforce Relations Supervisor and Chairperson of Lucent's Absence Control Board (live testimony)

        Lucent Technologies, Inc.
        1600 Osgood Street
        North Andover, MA 08145
        c/o Evan Spelfogel, (212) 351-4539

3.     Margaret L. ("Peggy") Blumer, Authorized Benefit Delegate (live testimony)

        Lucent Technologies, Inc.
        Health Center
        67 Whipany Road Room 4A-159
        Whippany, NJ 07981
        c/o Evan Spelfogel, (212) 351-4539

4.     Brian Ahern, Supervisor (live testimony)

        Lucent Technologies, Inc.
        1600 Osgood Street
        North Andover, MA 08145
        c/o Evan Spelfogel, (212) 351-4539

5.     Steven Sickel, Manager (live testimony)

        Lucent Technologies, Inc.
        1600 Osgood Street
        North Andover, MA 08145
        c/o Evan Spelfogel, (212) 351-4539

6.    Janice Danese, Manager (live testimony)

Lucent Technologies, Inc.
1600 Osgood Street
North Andover, MA 08145
c/o Evan Spelfogel, (212) 351-4539

7.    Leon (Lee) Pratt, Senior Manager (live testimony)

Lucent Technologies, Inc.
1600 Osgood Street
North Andover, MA 08145
c/o Evan Spelfogel, (212) 351-4539

8.    Mark Savelloni, Senior Manager (live testimony)

Lucent Technologies, Inc.
1600 Osgood Street
North Andover, MA 08145
c/o Evan Spelfogel, (212) 351-4539

## XI.    The Proposed Exhibits

### A.    By the Plaintiff

Plaintiff intends to use selected documents from DEF 00001-000178 that have been provided by the Defendant to the Plaintiff in discovery.  The Plaintiff reserves the right to supplement this list prior to trial:

1.    FMLA forms regarding Gould's request for FMLA time on May 5-6, 2003 and July 7, 2003.

2.    Medical documents/certification forms relating to Shelby Gould's health care condition in July, 2003.

3.    Correspondence between Blumer and Luann Gould in 2003 regarding FMLA (letters dated July 7, 2003, July 14, 2003, July 28, 2003, September 25, 2003).

4.      Correspondence or Lucent memoranda relating to Gould's termination on August 1, 2003

5.      The prescription medication (Erythromycin ointment) and the label for the prescription medication, dated July 7, 2003.

6.      Emails from Margaret Blumer to Lucent Managers in 2003, including one dated July 14, 2003 from Margaret Blumer to Cynthia Williams entitled "FMLA possible problem" regarding Gould's July 7, 2003 FMLA request and past requests. Lucent Document, DEF 000022.

7.      Gould's tax returns and/or W-2 statements from employers for years 2000 to 2006. Years 2003-2005 were provided by the Plaintiff. For years 2000-2002, Plaintiff only worked for Lucent. Lucent should have W-2s for those years.


**B.      By the Defendant**

The Defendant reserves the right to supplement this list prior to trial:

1.      Relevant portions of Plaintiff's personnel file maintained by Lucent, including documents Bate stamped DEF 00001-00093.

2.      Applications Plaintiff submitted to Lucent in 2003 for family and medical leave, including documents Bate stamped DEF 00029-30, 00034, 00040-42, 00048-50.

3.      Lucent's determination letters concerning Plaintiff's eligibility for family and medical leave in 2003, including documents Bate stamped DEF 00035-36, 00038, 00044, 00051.

4.      Documents relating to warnings Plaintiff received for her poor attendance record, including documents Bate stamped DEF 00011-12, 00053-54, 00072.

5.      Plaintiff's termination letter dated August 1, 2003 Bate stamped DEF 00055.

6.      Relevant Company policies and procedures, including Lucent's Absence Control Plan Bate stamped DEF 00094-000135; Lucent's excused work day policy Bate stamped DEF 00138-139, Lucent's Leave of Absence Policy Bate stamped DEF 00155-158.

7.      Relevant excerpts from the Collective Bargaining Agreement.

8.      July 9, 2003 letter from Greater Hampstead Family Medicine, PC concerning Plaintiff's daughter's chicken pox  Bate stamped DEF 00037.

9.      September 18, 2003 letter from the Hampstead Village Preschool, Inc. Bate stamped DEF 00050.

10.     Plaintiff's attendance records from 1996 to 2003.

11.     Records of Lucent employees' requests for FMLA leave from 1996 to 2003.

12.     Records of Lucent employees' requests for FMLA leave from 2004 to present.

13.     Lucent's records concerning employees who reached Level V of the ACP.


**XII.   The Parties' Respective Positions on Any Remaining Objections to the Evidence Identified In the Pretrial Disclosure Required By Fed. R. Civ. P. 26(a)(3)**

**A.      Plaintiff's Statement:**

1.      The Plaintiff objects to Section XI(B), numbers 11 and 13 being admitted into the record, as they were requested in discovery but were not provided to the Plaintiff. Plaintiff objects to number 12 on the basis of relevance, as the proposed evidence comes well after the Plaintiff's termination and is unrelated to the employer's treatment of the Plaintiff.

**B.    Defendant's Statement:**

Defendant objections to Plaintiff's evidence are as follows:

1.    Plaintiff has not provided Defendant with copies of the documents or exhibits identified in Plaintiff's Pretrial Disclosure.  Plaintiff has never produced any documents to Defendant in this litigation, except her tax returns for 2003 through 2005.  Pursuant to Rule 26(a)(1), Plaintiff had an obligation to identify any documents that she may use to support her claims.  In addition, Plaintiff was obligated to produce responsive, non-objectionable documents in response to Defendant's discovery requests.    Pursuant to Rule 26(e), Plaintiff had an obligation to supplement her discovery responses, including responses to requests for documents.  Accordingly, to the extent that the documents listed in Plaintiff's Pretrial Disclosure are documents that have not been produced in this litigation, Plaintiff is precluded from using them as evidence pursuant to Rule 37(c).

2.    To the extent such documents or exhibits were provided by Defendant, Plaintiff has failed to identify such documents or exhibits by Defendant's Bates Number.  Accordingly, it is unclear precisely which documents or exhibits Plaintiff seeks to introduce.

3.    Defendant also objects to such documents or exhibits upon all available grounds for exclusion, until such time as a copy of such documents or exhibits have been provided to Defendant or such documents have been identified by Bates number.

4.    Defendant    hereby    incorporates    all    objections    raised    in    its contemporaneously filed Motion in Limine.

5.    Defendant reserves the right to amend its objections upon Plaintiff's identifying her exhibits with more particularity.

Defendant responds to Plaintiff's objections in XII(A)(1) as follows:

6.    The records referred to in Section XI(B)(10) through XI(B)(13) are admissible as records made in the regular course of business.

Dated: Methuen, Massachusetts
       January 25, 2007

                                    Respectfully Submitted,

                                    HARVEY, KLEGER & THOMAS

                                    By:    /s/ Robert R. Thomas

                                    Linda A. Harvey (547994)
                                    Robert R. Thomas (639402)
                                    184 Pleasant Valley St. – Suite 1-204
                                    Methuen, Massachusetts 01844
                                    (978) 686-9800
                                    Attorneys for Plaintiff Luann P. Gould


                                    EPSTEIN BECKER & GREEN

                                    By:    /s/ Evan J. Spelfogel

                                    Evan J. Spelfogel (474440)
                                    Jamila A. Berridge (Admitted Pro Hac Vice)
                                    250 Park Avenue
                                    New York, New York 10177
                                    (212) 351-4833
                                    Attorneys for Defendant Lucent Technologies, Inc.